# United States District Court

## FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

| | | |
|---|---|---|
| **EDMUND HEIMLICH**<br>Plaintiff | ) ) ) | **Case No.** _____ |
| -V- | ) ) | **DEMAND FOR** |
| **DAVID S. COOK, AS PERSONAL**<br>**REPRESENTATIVE OF**<br>**ESTATE OF ERNEST L. HEIMLICH**<br>Defendant | ) ) ) ) | **JURY TRIAL** |

# PLAINTIFF'S ORIGINAL PETITION
# BREACH OF CONTRACT

NOW COMES <u>Edmund Heimlich</u>, as **Plaintiff**, and in the capacity of a third-party to the

Defendant ("**Heimlich**"). The **Defendant** is <u>the Estate of Ernest L. Heimlich, Deceased</u>

("**Estate**") by and through David S. Cook ("**Cook**"). Cook was appointed to serve the

Beneficiaries of the Estate as their Personal Representative, in an Administration that is

Dependent upon the Statutory Probate Court of Texas that appointed him. **Exhibit A**.

## I.  INTRODUCTION

Plaintiff Heimlich is entitled to Judgment as a Matter of Law against the Estate for breach

of contract, anticipatory breach, promissory estoppel, and quantum meruit / unjust enrichment.

Every element required for Judgment as a Matter of Law has been admitted to in the pleadings

signed by Cook in his capacity as the Personal Representative of the Estate. The facts are well-

established in the public record in the Probate Court in Harris County Texas.

1

Cook, in the name of "Estate of Ernest L Heimlich", as the Seller, and Heimlich in the name of "Edmund Heimlich and/or Assigns" as Buyer, entered into an agreement and contract on November 18, 2021, regarding one of three pieces of real property of the Estate that had to be liquidated to settle the estate. The property is known as 806 Comstock Springs in Katy Texas (**"the property"**). The parties agreed that Heimlich would assume Cook's legal duty to maintain the property and perform the repairs needed to the building on the property. The law in the Texas Estates Code imposed this duty on Cook. See Tex. Est. Code § 351.101.

The parties agreed that Heimlich would have no less than 90 days to assign the contract and close the sale to another buyer. The parties agreed and understood the difference between the contract purchase price and the sales price the assignee agreed to pay would be payment to Heimlich for his services to the Estate and profit for his investment. Heimlich performed and informed Cook, Seller's Personal Representative, 19 days before the conclusion of the 90 days that he performed and was ready to close. But Cook refused to comply with the Order of the Court to sell the property to the First Reported Buyer "Edmund Heimlich and/or assigns".

## II. THE PARTIES

A. **Heimlich,** as Plaintiff, in the Capacity of a Third-Party to the Estate;

Heimlich is a Natural Person suing in his own right. He is blessed with the additional protections of law and government as a citizen of the United States. Born in the United States, in the State of Ohio, the land of his ancestors for several generations. He is a "Citizen in the several States" referred to in Art. IV. Sec. 2, of the United States Constitution ('US Const.'). That provision of the Constitution, and the Fourteenth Amendment, impose a duty on the United States (federal government) to provide him with the full protection of the Law against all

2

enemies, foreign and domestic, including those who may hide in positions of public trust in any division of the Federal Government, or a State Government, including the Judiciary.

Plaintiff Heimlich is also an heir of Ernest L. Heimlich and, therefore, has the capacity of a 'Beneficiary' of the Estate (**"Beneficiary"**) to whom Cook owes a fiduciary duty. But to avoid confusion of the issues and Cook's barratry at the expense of the beneficiaries of the Estate, Heimlich's complaint is in his capacity as a 'third-party'.

The supreme Law of the Land exists to protect Heimlich. He hereby petitions the United States of America, as a Nation under the Rule of Law, for the enforcement of this Law:

### Constitution of the United States
### Article VI

*This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.*

Heimlich is a resident of the State of Texas entitled to the protection of his natural rights secured in the Texas Constitution's Bill of Rights. As a Citizen of Ohio, by birth and choice, he is entitled to the protection provided by diversity of citizenship jurisdiction. See Article IV, Section 2, of the Constitution of the United States: *"The Citizens of each State shall be entitled to all the Privileges and Immunities of Citizens in the several States"*. He is entitled to Equal Protection of the Law guaranteed by the Fourteenth Amendment, regardless of his temporary residency.

The supreme Law of the Land ("**Supreme Law**") is (1) <u>this Constitution,</u> (2) the <u>Acts of Congress,</u> made in Pursuance thereof, and (3) <u>Treaties</u> made (aka 'International Law') under the Authority of the United States. This includes the <u>International Covenant on Civil and Political Rights,</u> Dec. 16, 1966, 999 U.N.T.S. 171 (entered into force Mar. 23, 1976) ("**ICCPR**")

**A. Defendant,** in the Capacity of Personal Representative of an Estate;

Cook's motive for the breach of contract was to engage in Barratry. Cook, acting in the name of the Estate, breached the contract to instigate litigation. The record shows Cook then hired himself, in his capacity as a licensed lawyer, and his law firm, Cook Law PLLC, to represent the Estate at an hourly rate and for the number of hours Cook chose to charge.

<u>The Estate</u> of Ernest L. Heimlich, Deceased, is the **only** Defendant ("**Estate**"). The Estate may be served through the <u>Personal Representative</u> of the Estate, David S. Cook. **Exhibit A** is the Order that Appointed Davi S. Cook ("**Cook**") to serve as a Personal Representative of the Estate in his <u>Individual Capacity.</u> Of relevance to this case is the fact that Cook was **NOT** appointed to serve as a Licensed Lawyer ("Attorney"). There is no mention of the law firm known as Cook Law, PLLC in the Order appointing Cook as the Personal Representative.

The Order of Appointment established a 'Dependent Administration'. **Exhibit B** is a page from the Fiduciary Handbook provided by the Probate Courts in Harris County Texas explaining the difference between an 'Independent Administration' and a 'Dependent Administration'. The Personal Representative in a Dependent Administration is Dependent on the Court for approval of actions that impose a cost on the Estate or otherwise affect the interests of the Estate's Beneficiaries. The discretionary authority of the Personal Representative is limited.

As a Fiduciary, Cook is barred from hiring himself in his capacity as an Attorney. As a Fiduciary, Cook is barred from hiring any law firm to represent the Estate without the preauthorization of the Judge assigned to the case. Whenever a fiduciary contracts for professional services that may profit them in their capacity as an individual there is a conflict of interest. This is known as **self-dealing.** The prohibition against a fiduciary, in any setting, engaging in self-dealing is long and well-established in the common law.

**BARRATRY** is defined in the Texas Penal Code Section in 38.12(a): "**A person commits an offense if, with intent to obtain an economic benefit the person: (1) knowingly institutes a suit or claim that the person has not been authorized to pursue**". A civil action for barratry in Texas is codified in Section 82.0651 of the Texas Government Code, titled "Civil Liability for Prohibited Barratry" may be brought against a Cook, in his capacity as an Attorney, and his alter-ego, CookLaw, by the beneficiaries of the Estate.

In this action, Plaintiff is acting in his Capacity as a Third-Party to the Estate. A person with a claim against the Estate in capacity no different from and equal to, the capacity of Cook as a Personal Representative with a claim against the Estate for fees for his services in that capacity. The Barratry committed by Cook is of issue in proving Plaintiff's claim that he has, and is, being deprived of Equal Protection of the Law by a conspiracy between Cook and Probate Court Judges in Texas that are **not** named as Defendants in this complaint.

Part of Cook's scheme is to piggyback off the free legal services provided by the Office of the Harris County Attorney and other taxpayer-funded public law firms for his defense. Part of Cook's scheme is to piggyback off the appearance of legitimacy that comes from a government entity acting in the capacity of a law firm. This complaint deprives Cook of that benefit.

5

# IV. JURISDICTION AND REMOVAL

Three cases, <u>495484-401</u>, <u>495484-402</u>, and <u>495484-403</u>, are hereby removed from the

Probate Court in Harris County into this court.

**28 U.S.C. § 1443 states:**

*Any of the following civil actions or criminal prosecutions, commenced in a State court may be*

*removed by the defendant to the district court of the United States for the district and division*

*embracing the place wherein it is pending:*

*(1) Against any person who is denied or cannot enforce in the courts of such State a right under*

*any law providing for the equal civil rights of citizens of the United States, or of all persons*

*within the jurisdiction thereof;*

*(2) For any act under color of authority derived from any law providing for equal rights, or for*

*refusing to do any act on the ground that it would be inconsistent with such law.*

Heimlich was named a defendant in a state court, the probate court of Harris County,

Texas, in case numbered <u>495484-401</u> and again named a defendant in case numbered <u>495484-</u>

<u>403.</u> The requirements under 'procedure for removal' in 28 U.S. Code § 1446(a) is for a

"defendant" to provide "a short and plain statement of the grounds for removal, together with a

copy of all process, pleadings, and orders served upon such defendant or defendants in such

action".

Jurisdiction is required by Sec. 3 of the Civil Rights Act of 1866 and **28 USC §**

**1343(a)(3).** Plaintiff has been denied, or cannot enforce in the courts of the State or locality the

rights secured to him in the first section of the Act of 1866: "*the same right, in every State and*

*Territory in the United States, to make and enforce contracts, to sue, be parties, and give*

*evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to*

*full and equal benefit of all laws and proceedings for the security of person and property*"

6

With emphasis added' the relevant provisions of Sec. 3: "*And be it further enacted, **That the district courts of the United States**, within their respective districts, shall have, **__exclusively__** of the courts of the several States, cognizance of all crimes and offences committed against the provisions of this act, **__and also__**, concurrently with the circuit courts of the United States, of all causes, **__civil__** and criminal, __affecting persons **who are denied or cannot enforce in the** courts or judicial tribunals of the State __or locality where they may__ be any of the rights secured to them by the first section of this act;*

Cook engaged in a conspiracy with the Judge of the Probate Court that appointed him to deprive Heimlich of due process of law. Under color of state law, Heimlich has no access to the process in the courts of the State of Texas or the Courts in the locality known as Harris County in Texas. Defendant, acting in the name of the Estate in the same conspiracy, has deprived Heimlich of universally recognized basic, fundamental, substantive rights of the Human as an Individual being, secured in International Law that, by treaty, is binding on the Federal Republic known as the United States. The International Covenant on Civil and Political Rights mandates:

*Article 14;*
"All persons shall be equal before the courts and tribunals."

*Article 16;*
"Everyone shall have the right to recognition everywhere as a person before the law."

– See Also our First and Fourteenth Amendment, Due Process of Law.

*Article 26;*
"All persons are equal before the law and are entitled without any discrimination to the equal protection of the law." – See also our Fourteenth Amendment

## V. THE FACTS

7

## A. MATERIAL FACTS FROM PUBLIC RECORD OF CASE <u>495484-401</u>

Attached as **<u>Appendix A</u>** is the pleading filed by David S. Cook, as a Dependent

Administrator of the Estate of Ernest L. Heimlich, in the State Probate Court, case numbered

<u>495484-401</u>. It is titled "*First Amended Petition for Trespass, for Breach of Contract and*

*Application for Injunctive Relief*". Therein Cook admits to his Breach of Contract!

As a public record maintained by the Clerk of Harris County Texas, this evidence cannot

be disputed as anything other than authentic under <u>Fed.R.Evid. 901(b)(7)</u>. Therein Cook

identifies himself as the Plaintiff in that case and Edmund B Heimlich (plaintiff in this court) as

the Defendant. David S. Cook signed the pleading under the name of his Law Firm, COOK

LAW, PLLC, and provided his Texas Bar No. Then under the title of VERIFICATION he stated

*"I, David S. Cook, Administrator, swear that the facts stated above are within my knowledge and*

*are true and correct, as far as known to me"*, before a Notary Public.

### Elements Required for Judgment as a Matter of Law

The elements of a breach of contract claim are well-established in common law. Liability

for Breach of Contract is established by **1)** the existence of a valid contract; **2)** performance or

tendered performance by the plaintiff; **3)** material breach by the defendant; and 4) damages

sustained by the plaintiff as a result of that breach. Paragon Gen. Contractors, Inc. v. Larco

Constr., Inc., 227 S.W.3d 876, 882 (Tex. App.--Dallas 2007, no pet.).

#### 1. **The Valid Contract**

In Appendix A in the unnumbered 6th paragraph under the heading of "Pertinent Facts" the

sworn pleading of Cook states:

> *"On November 19, 2021, Administrator entered into a contract to sell the Comstock Property*
> *to Defendant. Exhibit A."*

The Contract at issue "Exhibit A" is attached and shows the buyer to be "Ed Heimlich and/or
assigns". The buyer, therefore, included any to whom Ed Heimlich chose to assign the sale.

### 2.  The Tendered Performance by Plaintiff

In Appendix A, In the unnumbered 9th paragraph under the heading of "Pertinent Facts"
the sworn pleading of Cook, signed by Cook, states:

> *"Defendant then attempted to enter into a contract on behalf of the Estate, as seller, to*
> *sell the Comstock Property to a third-party buyer".*

In fact, Ed Heimlich did assign the contract and, thus, performed on the contract. He was ready
to close the transaction with the assignee, an all-cash buyer, anytime thereafter when the seller,
the Estate represented by Cook, was ready.

### 3.  The Material Breach by Defendant

In Appendix A, In the same unnumbered, 9th paragraph under the heading of "*Pertinent*
*Facts*", in the same paragraph in which he confirms performance, Cook states:
"*Administrator informed Defendant that he would not enter into a subsequent contract on behalf*
*of the Estate. Exhibit E."*

Cook has admitted in a sworn document that he (1) entered into the contract, (2) that
Heimlich performed on the contract, and (3) that Cook refused to perform on the contract.

Cook claims a trespass by Heimlich as his excuse. An excuse that has no basis in law and
is, therefore, immaterial to Heimlich's complaint for breach of contract. Attached as **APPENDIX**

9

**B** is the Motion for Specific Performance prepared and filed by Attorney Candice Schwager while representing Heimlich (**Schwageer's Motion**). To evade a ruling on this Motion, Defendant Cook coerced Schwager to withdraw her representation of Heimlich. But the pleading she prepared, and the exhibits attached to it, stand as authenticated evidence.

In paragraph 4 on page 5 she notes: "Paragraph 7A of the contract, titled ACCESS, states that "**Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times.**"" It is an incontrovertible fact of the law of the contract that Mr. Heimlich had the right to access the property, as did his agents, to maintain and repair the property.

In paragraph 16 on page 8 she provides an excerpt from the sworn oral testimony provided by Cook and authenticated by Cook in his pleadings. Copied and pasted:

"16. By contracting to sell to "Ed Heimlich and/or assigns" Cook knew of Mr. Heimlich's plan and admitted to this while on the witness stand. See page 24, lines 11 – 14 where David Cooks states; *"And he included Ed Heimlich and assigns in the contract, which I agreed to because I believed he was going to broker the property. Take it, turn around and sell it for a profit to somebody else."*

Cook's Exhibit F attached to his "Supplement to Expunge Notice of Lis Pendens" is from the Court Reporters Record of Trial Court Cause No. 495484-401 held on April 13, 2022. The relevant page is attached as Exhibit H to Schwager's Motion.

### 4. Partial Damages sustained by Plaintiff

Attached as **Appendix C** is the Assignment Contract as proof Plaintiff is entitled to a profit of $93,000, ($283.000 - $190,000) in exchange for his services to Cook and the Estate.

10

## B.  MATERIAL FACTS FROM PUBLIC RECORD OF CASE <u>495484-403</u>

Attached as **<u>Appendix D</u>** is the pleading filed by David S. Cook, as Dependent

Administrator of the Estate of Ernest L. Heimlich, in the State Probate Court as case numbered

495484-403. He titled it "Administrators Petition to Declare Mechanic's Lien Unenforceable and

Invalid" and it is file date stamped June 23, 2023, by the Clerk of Courts. Authentic under

Fed.R.Evid. 901(b)(7) as maintained in the public record by the Clerk for the Probate Courts of

Harris County Texas.  The Petition identifies the parties as follows in verbatim:

"Plaintiff is David Cook, Dependent Administrator of the Estate in Harris County

Probate Court No. 1 (currently)."

"Edmund B. Heimlich ("Defendant") is an heir to the Estate of Ernest Heimlich,

Deceased ("Decedent")."

Among the facts conceded by Cook in the Petition, the following are agreed to by the

Plaintiff in this Court.  Named a defendant in that petition filed in the State Probate Court.

1.  The Defendant is Heimlich. And that Heimlich is an heir to the Estate David S. Cook

     represents (aka "the Representative", aka "Cook").

2.  Defendant, is a Beneficiary, is the Decedent's Son. (Son of Ernest L. Heimlich)

3.  806 Comstock Springs in Katy Texas was real property of the Estate and has a lien filed

     by Heimlich.

4.  It was a Property of the Estate of which Defendant as heir, a Beneficiary, owned in part.

5.  On November 19, 2021, in his capacity as the personal representative of a Fiduciary for

     the Estate, David S. Cook entered a contract to sell the property to Heimlich.

(Fact number 5 is true but fails to recognize the buyer in the contract includes those to whom

Edmund Heimlich chooses to assign the contract to. The buyer is named <u>Edmund Heimlich</u>

<u>and/or assigns.</u> It therefore provides Edmund Heimlich with the right to sell the property and assign his interest to the buyer.  See Cook's testimony on the witness stand in Appendix B.)

6.   Heimlich, informed the Estate's Representative, Cook, of his intent to make improvements before closing on the sale.

7.   Heimlich, among other things, painted the interior and installed new flooring.

8.   Heimlich, informed the Representative, Cook, he had hired a broker and listed the property for sale by assignment.

9.   Heimlich, entered into a contract to assign the contract for his purchase to another party..

10.   Cook sent a letter to the Broker Heimlich hired to find a buyer by assignment and ordered him to never access the property again.

11.   Cook also removed the for-sale sign and changed the locks.

12.   Heimlich filed a claim for the $79,500 due him for his services to the Estate.

Facts, authenticated by the filing of Cook, again establish the Estate's liability to Heimlich! The facts numbered 5, 9, 10, and 12 above, provided by filing of Cook into the public record maintained by the Harris County Clerk in file numbered 495484-403 are incontrovertible and authenticated proof Heimlich is entitled to a Judgment as a Matter of Law for his damages as all elements of liability for breach of contract have been admitted to by Cook in the public record.

The elements of a breach of contract claim are well-established in common law. Liability for Breach of Contract is established by 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) material breach by the defendant; and 4) damages sustained by the plaintiff as a result of that breach. Paragon Gen. Contractors, Inc. v. Larco Constr., Inc., 227 S.W.3d 876, 882 (Tex. App.--Dallas 2007, no pet.).

## C. MATERIAL FACTS FROM PUBLIC RECORD OF CASE <u>495484-402</u>

Cook, in an attempt to cover his own breach of contract, accused Heimlich of breach of contract. Because Texas Law provides the District Courts with jurisdiction on claims against a Personal Representative of an Estate for injuries caused by their acts administering the Estate, Heimlich did not file a counterclaim into the Ancillary case numbered <u>495484-401</u>. The case Cook initiated in the probate court. Heimlich filed his claim for Breach of the same contract in the District Court. It was assigned to the 333rd and number **<u>2022-12360</u>**.

Judge Newman, in complicity and conspiracy with his appointee, Cook, ordered the case transferred from the District Court to the Probate Court. Judge Newman recused himself on April 24, 2022. But Cook managed, through ex parte efforts, to secure the signature of the Judge of the 333rd District Court to sign off on the transfer Order on August 19, 2022. The transfer was made on September 16, 2022, and the Clerk for the Probate Courts of Harris County numbered it <u>495484-402</u>. Although Heimlich is named therein as Plaintiff he stands as a Defendant filing a counterclaim to the legal action filed by Cook as plaintiff numbered 495484-401.

The attached **APPENDIX B** was prepared by an Attorney hired by Heimlich, Candice Schwager, and filed in that case. To avoid the possibility of the court ruling on that Motion Cook coerced Schwager to withdraw. But her Motion, and the exhibits she attached, establish Heimlich's right to a Partial Summary Judgment, as a Matter of Law.

## VI. REQUEST FOR PRELIMINARY INJUNCTION

Heimlich moves for this Court to issue a Preliminary Injunction to the Harris County Probate Court to prevent further damage to the Estate and Heimlich. The probate court must be enjoined from enforcing state law or orders (decisional law) that come into conflict with the superior authority of the Constitution of the United States as the supreme Law of the Land, as

well as Acts of Congress and International Law, also known as a Treaty, ratified by Congress and, therefore, requiring compliance by the Executive and Judiciary branches of our Federal Republic. See Ex parte Young, 209 U.S. 123 (1908).

## VII. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant on all counts, and grant the following relief:

1. **Breach of Contract and Anticipatory Breach:** Award compensatory damages in an amount sufficient to put Plaintiff in the position it would have occupied had Defendant fully performed its contractual obligations, including damages for lost profits, consequential losses, and any costs incurred in reliance on Defendant's representations. In addition, upon finding that Defendant's repudiatory conduct amounted to an anticipatory breach as held in *Phosphate Mining Co. v. Atlanta Oil & Fertilizer Co.*, 20 Ga. App. 660 (1917), order immediate relief to compensate Plaintiff for foreseeable losses from such anticipatory conduct.

2. **Unjust Enrichment:** Order Defendant to disgorge any amounts or benefits received to which it was not legally entitled. As articulated in *Ford Motor Co. v. Ghreiwati Auto*, 369 U.S. 469 (1962), and supported by federal precedent on equitable remedies, Defendant's retention of benefits under circumstances that clearly unjustify its enrichment should be corrected by recalculating the gains made at Plaintiff's expense.

3. **Promissory Estoppel:** Enforce the principle of promissory estoppel by declaring that Defendant's clear and unequivocal promises—on which Plaintiff justifiably relied to its detriment—must be enforced despite the absence of a formal contract modification. Consistent with the reasoning in *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), Plaintiff respectfully

requests that Defendant be estopped from denying its promise, and an award be made to indemnify Plaintiff for his reliance damages.

4. **Equitable Relief:** Grant such further and equitable relief as may be appropriate to prevent the Defendant from unjustly benefiting from its breach. In light of Defendant's actions, which have resulted in both an economic wrong and an inequitable enrichment, Plaintiff seeks a comprehensive remedy integrating both legal and equitable measures.

**WHEREFORE, Plaintiff respectfully prays that this Court:**

**A.** Find that Defendant breached the contract and engaged in anticipatory breach, unjust enrichment, and promissory estoppel;

**B.** Award Plaintiff compensatory damages in an amount to be determined at trial, together with interest and costs;

**C.** Order Defendant to disgorge any improper enrichment and to pay reliance damages under the doctrine of promissory estoppel; and

**D.** Grant any other relief that this Court deems just and proper, including costs and fees.

**Dated: April 28, 2025**

Respectfully submitted,

/s/ digital signature of Edmund Heimlich
Signature of the Plaintiff: Edmund Heimlich
2724 Philomena St. # 407
Austin, TX 78723
E: ed44@att.net / 737-336-2000

15

# EXHIBIT LIST

**Exhibit A** - Order appointing David S. Cook to Represent the Estate

**Exhibit B**. – Fiduciary Handbook Page on limits of discretion for Representative of a Dependent Administration

# APPENDIX LIST

**Appendix A** - Filed by David S. Cook, as Dependent Administrator of the Estate of Ernest L. Heimlich, in the State Probate Court, case numbered 495484-401. It is titled "First Amended Petition for Trespass, for Breach of Contract and Application for Injunctive Relief".

**Appendix B** - Motion for Specific Performance prepared and filed by Attorney Candice Schwager while representing Heimlich.

**Appendix C** - Assignment Contract as proof Plaintiff performed and suffered damages of not less than $93,000.

**Appendix D** - Filed by David S. Cook, as Dependent Administrator of the Estate of Ernest L. Heimlich, in the State Probate Court as case numbered 495484-403. He titled it "Administrators Petition to Declare Mechanic's Lien Unenforceable and Invalid"

# APPENDIX A

FILED
4/5/2022 11:48 AM
Teneshia Hudspeth
County Clerk
Harris County - County Probate Court No. 2
Accepted By: KW

NO. 495484-401

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT NO. 2 |
| | § | |
| ERNEST L. HEIMLICH, | § | OF |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## FIRST AMENDED PETITION FOR TRESPSASS, FOR BREACH OF CONTRACT AND APPLICATION FOR INJUNCTIVE RELIEF

David S. Cook, as Dependent Administrator ("Administrator") of the Estate of Ernest L. Heimlich, Deceased ("Estate"), files this first amended petition for trespass and application for injunctive relief, and would show as follows:

### DISCOVERY LEVEL

Defendant asserts that this cause of action should be litigated pursuant to Discovery Level 3.

### JURISDICTION

Venue is proper in this county, and this Court has jurisdiction over the subject matter because a probate administration is pending in the above entitled and numbered base cause and court.

### PARTIES

Plaintiff is David Cook, Dependent Administrator of the Estate in Harris County Probate Court No 2.

Edmund B. Heimlich ("Defendant") is currently residing and in wrongful possession of the premises located at 6410 Rancho Blanco Court, Houston, Texas 77083 (the "Rancho Blanco Property").[1]  Plaintiff understands Defendant may also have an abode in Austin, Texas, in which

---

[1]    Defendant has been evicted from the Rancho Blanco Property, ordered to pay $6,500 in attorneys' fees, and has filed an appeal. *See* below.  Administrator expressly acknowledges he cannot evict Defendant through this petition

he permanently resides, Plaintiff does not know the physical address. As far as Plaintiff knows, Defendant is not employed. Defendant's email address is ed44@att.net. His telephone number is 512.779.0234. Any service of process of these proceedings should be delivered to Defendant at Defendant's email address and the Rancho Blanco Property.

### PERTINENT FACTS

Ernest Heimlich ("Decedent") died intestate on May 25, 2021, owning three residential properties, being the Rancho Blanco Property, and two other residences located at 7318 Mesones Drive, Houston, TX 77083 (the "Mesones Property") and 806 Comstock Springs Drive, Katy, TX 77450 (the "Comstock Property").

The Rancho Blanco Property, the Mesones Property, and the Comstock Property are collectively referenced as the "Estate Property."

Defendant is Decedent's son, and one of Decedent's five children, who are all believed to be Decedent's purported heirs.

Decedent's children are believed to include Defendant, Catherine Craig, Virginia Lahrman, Darcia Bland, and Anne Board ("Purported Heirs").

Administrator was appointed by the Court in his fiduciary capacity on September 9, 2021 and qualified as administrator on September 22, 2021.

On November 19, 2021, Administrator entered into a contract to sell the Comstock Property to Defendant. **Exhibit A.** As a part of the negotiation, Defendant informed Administrator that Defendant desired to make improvements to the Comstock Property *before* closing the sale of Comstock. Defendant submitted an addendum with his offer allowing him to have access to the

---

for trespass; rather, Administrator asks that the injunctive relief will apply to all three of the Estate properties, two immediately (the Mesones Property and the Comstock Property) and one (the Rancho Blanco Property) when Ed has either voluntarily vacated or been evicted from it.

Comstock Property before closing. Administrator responded to Defendant's offer, and in particular, the addendum, as follows (**Exhibit B**):

> Also, the work during the term of the contract makes it difficult. I am certain Ed has great intentions, but things happen. What if Ed pays a contractor or sub to do work, and not much gets accomplished other than demolition. Thereafter, Ed walks away from the deal. If that is the case, the estate will be responsible to redress any damages done to the property with only the earnest money (less than $2K). Can we just make this a traditional closing and turn over possession at closing?

In a later email, Defendant responded: "It is my understanding that David wants the traditional 'possession upon closing.' So, that addendum can be ignored, and David can sign all the other sheets." **Exhibit C.**

Administrator and Defendant signed the Earnest Money Contract, which did not include the Addendum and did not allow Defendant to have possession of the Comstock Property until closing (i.e., until he bought it). **Exhibit A.**

After the parties signed the Earnest Money Contract, Defendant broke into and entered the Comstock Property and changed the locks.[2] Thereafter, Defendant—among other things—painted the interior and made changes to the flooring. Administrator was later informed that Defendant had hired a broker and was listing it for sale. In response to an email, Administrator questioned how Defendant was doing so, and copied Defendant's listing agent. **Exhibit D.** Defendant then attempted to enter into a contract on behalf of the Estate, as seller, to sell the Comstock Property to a third-party buyer. Administrator informed Defendant that he would not enter into a subsequent contract on behalf of the Estate. **Exhibit E.**

As a result of Defendant's actions, and the delay caused by his trespass, his improper listing, and his unsuccessful sale to a third party, Defendant was not able to perform under the

---

[2]     When Administrator learned that Defendant had entered the Comstock Property, on a phone call, Administrator asked Defendant how he was able to access the property. Defendant replied: "I trespassed."

Earnest Money Contract in accordance with its terms. Consequently, Administrator changed the locks again (at a cost of approximately $250) and sent a demand that Defendant and his agent never access the Comstock Property and remove the on-line listing of the Premises. **Exhibit F.** Administrator then removed the "for sale" sign in the front yard and the lock box from the door.

In addition to Defendant's trespass on the Comstock Property, Defendant also trespassed on the Rancho Blanco Property. Even though the Rancho Blanco Property belongs to the Estate, Defendant moved into this property after Decedent's death and refused to leave. Defendant did not have any agreement to remain in the Rancho Blanco Property, never paid rent, and did not maintain it, but rather, harmed the property by failing to maintain it and causing damage to it. In order to properly administer the Estate, Administrator needs to be able to list and sell the Rancho Blanco Property, and distribute the net sales proceeds, if any, to the heirs. Administrator cannot sell the Rancho Blanco Property because of Defendant's trespass.[3] Administrator also has the option of delivering a Deed in Lieu of the debt owed on the property but cannot do so if Defendant is in possession of it. Defendant was asked to vacate the Rancho Blanco Property several times (October 4, 2021, January 6, 2022, and January 20, 2022). Ultimately, Defendant was evicted from the Rancho Blanco Property on March 22, 2022. Despite his eviction, Defendant remains in the Rancho Blanco Property and has filed an appeal.

### *TRESPASS*

Defendant is labile to the Estate for trespass.

Trespass to real property is an unauthorized entry upon the land of another and may occur when one enters—or causes something to enter—another's property. *See Coastal Oil & Gas Corp.*

---

[3] Defendant's own photographs of the Property demonstrate that Rancho Blanco is filthy. *See* Photographs attached as Exhibit M. In addition, Defendant is a violent person. It is not safe for real estate agents or prospective buyers to enter the Property. *See* Video attached as Exhibit G.

*v. Garza Energy Trust*, 268 S.W.3d 1, 11 n.29 (Tex. 2008); *Glade v. Dietert*, 295 S.W.2d 642, 645 (Tex. 1956) ("[E]very unauthorized entry upon land of another is a trespass even if no damage is done or injury is slight."). Trespass occurs when a person enters another's land without consent. *Wilen v. Falkenstein*, 191 S.W.3d 791, 797 (Tex. App.—Fort Worth 2006, pet. denied). In order for a plaintiff to successfully assert a trespass cause of action, a plaintiff must prove that (1) he owns or has a lawful right to possess real property, (2) the defendant entered the land and the entry was physical, intentional, and voluntary, and (3) the defendant's trespass caused injury. *Id.* at 798. Only nominal damages need be asserted and proven to be successful for trespass. *Henry v. Williams*, 132 S.W.2d 633, 634 (Tex. Civ. App.—Beaumont 1939, no writ) (by alleging and proving trespass, appellants "were entitled, at least, to nominal damages")).

Administrator seeks damages related to Defendant's trespass on the Comstock Property, including, but not limited to: (1) loss of use of property; (2) loss of expected profits from the use of the property—including the decrease in sale value due to Defendant's subpar, unauthorized workmanship; (3) loss of any carrying costs expended by the Administrator on behalf of the Estate during Defendant's trespass; and (4) the costs of having to change the locks for a second time.

Administrator also seeks damages related to Defendant's trespass on the Rancho Blanco Property. Defendant is currently trespassing on the Rancho Blanco Property. The Rancho Blanco Property belongs to the Estate of Ernest L. Heimlich. Defendant is living on the property without the Estate's consent, and is therefore liable to the Estate for Trespass.

Administrator seeks damages related to Defendant's trespass on the Rancho Blanco Property, including, but not limited to: (1) loss of use of property; (2) loss of expected profits from the use of the property; (3) loss of any carrying costs expended by the Administrator on behalf of the Estate during Defendant's trespass; (4) cost of clean-up of the property and (5) the loss of rental

income of $1,500 per month from the date of Decedent's death until eviction.

## BREACH OF CONTRACT

Plaintiff incorporates the facts set forth in other sections of this petition and incorporates same in this portion of the petition as if fully set forth herein.

Defendant breached the contract by (i) trespassing and taking possession of the Comstock Property before he was entitled to do so and (ii) defaulting on the contract. Ed has refused to release the escrow payment which is prohibited by Paragraph 18 of the contract. Paragraph 18(D) provides:

> agent from all adverse claims related to the disbursal of the earnest money.
>
> D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

Moreover, Defendant filed a Lis Pendens against the Comstock Property, even though the contract specifically provided that it would terminate if Defendant failed to comply with its terms. *See* Para. 15. Section 17 (and 18, *supra*) of the Contract provides that a Seller who prevails in any legal proceeding related to the contract is entitled to recover reasonable attorney's fees and costs of the proceedings.

> 17. ATTORNEY'S FEES: A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.
> 18. ESCROW:

Defendant seeks release of the earnest money and delivery of the extension fee to the Estate, an award of damages and payment of Administrator's reasonable and necessary attorneys' fees and costs related to (ii) Defendant's default of the contract, (ii) the collection of the earnest money, (iii) the cancelation of the Lis Pendens on the Comstock Property, and (iv) this trespass action.

## PETITION FOR INJUNCTIVE RELIEF

Administrator references the factual allegations stated above and incorporates them in this section as if fully set forth herein.

Administrator asks this Court to grant a temporary restraining order, temporarily enjoining Defendant and/or his agents from accessing any Estate real property, including the Comstock Property, the Mesones Property, and the Rancho Blanco Property.

Administrator is likely to succeed on the trespass cause of action he has pled because (1) Defendant had no legal right to enter the Comstock Property or the Rancho Blanco Property, (2) Administrator has the lawful right to possess Premises, (3) Defendant entered the land and the entry was physical, intentional and voluntary, and (4) his trespass caused damages.

Unless this Court immediately restrains Defendant, the Estate will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Administrator complete, final and equal relief. First, the Estate Properties are not insured. There are no funds in the Estate to insure them. Secondly, Defendant has proven that he will not abide by direction or demands. He refuses to abide by the terms of a written contracts. He willfully and without any authority, broke and entered into Estate property and caused his agents to do the same. Moreover, Defendant has proven himself to be a volatile and violent person. Defendant has caused harm to his niece while on Estate property. Specifically, after a meeting to divide estate property at the Rancho Blanco Property, Defendant hurled a chair at his niece causing bruising. **Exhibit G**. Administrator understands Defendant's niece has filed a police report alleging assault by Defendant.

Defendant also sends a constant barrage of almost daily emails threatening to cause expense and delay to the Estate through litigation claiming fraud, conspiracy, breach of fiduciary duty, quantum meruit, unjust enrichment, and the filing of lis pendens on all of the Estate Properties. *See e.g.*, **Exhibit H**.

Defendant has created a fiction that Administrator, along with a potential purchaser of the Comstock Property, and Defendant's broker, entered into a "conspiracy" to act as straw men to

make an offer on the Comstock Property, and then sabotage the closing in order to allow the

Administrator to recover the Comstock Property so all of co-conspirators to receive a kick back

(**Exhibit I**):

> Communications with [redacted] have led me to believe
> that lack of concern for his and his wife's commission,
> as well as the repayment of the note for what I borrowed from him.
> A Note secured by
> <u>806 Comstock Springs, Katy, Texas</u>
> and
> 6410 Rancho Blanco, Houston, Texas
> along with the determination of David Cook,
> now aided with the encouragement by [redacted],
> to get me out of 6410 Rancho Blanco
> reveal a conspiracy among them,
> and whomever the true buyer is
> behind the name D Fund II LLC. . . .
> All the pieces of the puzzle now fit.
> All I intend to name as defendants need to change course.

Defendant relatively recently informed all of the Purported Heirs and Administrator he

would not remove himself from the Rancho Blanco Property unless he was evicted. Consequently,

Administrator filed a Petition for Eviction and is pursing same. **Exhibit J.** Defendant was evicted

on March 22, 2022.

Defendant sends threatening emails to Administrator claiming he will sue him, take his law

license, bring him down, report him for ethics breaches and take his retirement (the following is

just one threatening excerpt from one of many emails) (**Exhibit K**):

> The email exchanges between David and I have revealed his intent to pick
> a fight with me.
> They reveal that up until yesterday I tried to reason with him and
> accommodate him.
> I have tried to avoid a fight.
> He has, to date, refused.
> He seems determined to have an all-out fight.
> He has displayed a determined to bring harm upon me,
> regardless of the harm that may come to him,
> and others in his law firm, as a result.

And with total disregard for harm to those he has a fiduciary duty to.

I have begun drafting a case against him.
And I have acquired from the State Bar a list of every Attorney in Harris and Fort Bend County.
I will also search in other parts of Texas as well for Attorneys to help me bring him down.

Maybe he is ready for retirement.
I'll get some of his retirement funds and make them my own.

Defendant called Administrator's office and threatened each of the staff that they would be without jobs, because he was going to take Administrator's law license.

Defendant sent an email to one of the attorneys practicing with Administrator, entitled "A question to ask yourself," implicitly threatening to take "extrajudicial means of recourse" (emphasis in the original)(**Exhibit L**):

J**** (redacted) –

You need to help your boss David.
He is not thinking clearly.
His ego has him blind to peril.
**Ask yourself -**
What might I do if someone threatened to cause me to lose $75,000?
What might I do if that $75,000 was all I had at the age of 67?

Better yet - **Ask yourself what other people might do?**
What might someone who has been mistreated by the Courts do?
What might they do if they have cause to believe they cannot turn to the Judge to protect them from an unconscionable, thoughtless, ego-blinded threat,
to their last $75,000 needed for their survival in their elder years?
What might they do if a Judge had already allowed their Father to be subjected to the felonious crime of Elder Exploitation and Elder Abuse so that an appointee could take $34,000 from their elderly Father and his heirs?
What might they do they has spent $8,000, much of it borrowed money, in an effort to secure from a Judge protection for their Father?
But rather than protect their Father, the Judge had caused even more distress for their Father in their final years?

> And wherein the Law provides for their recovery of the $8,000 the Judge refuses to act on their motion for recovery?
> Some people might think they need to resort to extrajudicial means of recourse.
> Some people would be very tempted to do so regardless of the potential consequences.
> I'm not one of them.
> I have laid out some of the legal response available to me.
> All of which should be sufficient to cause an ego maniac to come to his senses.

Another example of the type of threats Defendant has made to Administrator is the following:

> As for you.
> I know it's just a matter of time until someone you treat the way you treated me grants you your wish.
> You obviously are suicidal but don't have the courage to do it yourself.
> So you are trying your best to get someone to do it for you.
> Someone someday soon will grant you your wish. . . .
>
> I've got everything to gain and nothing to lose.
>
> You have much to lose and will gain nothing.

Defendant has shown that he cannot be trusted to maintain his composure, act with any civility, or refrain from committing another assault. Neither Administrator, his employees, or his agents or invitees can enter any of the Estate Properties without fear of verbal assault or physical injury. For these reasons, it is essential that this Court temporarily restrain Defendant from entering onto any of the Estate Properties, including the Comstock Property, the Rancho Blanco Property[4] and the Mesones Property. It is necessary that this Court act immediately, without giving notice to Defendant and a hearing on the matter because of Defendant's destructive and harmful behavior

---

[4]    Again, Administrator expressly acknowledges he cannot evict Defendant through this petition for trespass; rather, Administrator asks that the injunctive relief will apply to all three of the Estate properties, two immediately (the Mesones Property and the Comstock Property) and one (the Rancho Blanco Property) when Ed has either voluntarily vacated or been evicted from it.

and concerns that damage will result to the Estate before notice can be served and a hearing had thereon.

In order to preserve the status quo during the pendency of this action, Administrator also requests that Defendant be temporarily enjoined from entering onto or into the Comstock, Rancho Blanco and Mesones properties.

Administrator is willing to post a bond; however, request only a minimal bond because there is less than $2,000 in the Estate currently, and this application only seeks to prohibit Defendant from entering property which does not belong to Defendant.

*Prayer*

For the reasons stated herein, Administrator asks the following relief: (1) that a temporary restraining order be issued against Defendant ordering him to cease from entering any real property currently held in the Estate of Ernest Heimlich, including the Comstock Property, the Rancho Blanco Property and the Mesones Property; (2) set a bond; (3) that this Court set a hearing date and time on a date not to exceed fourteen days from the date of the Temporary Restraining Order to hear Administrator's Application for Temporary Injunction; (4) after a trial on the underlying trespass and breach of contract causes of action, grant damages and attorneys' fees as requested herein; and (5) grant all other relief to which Administrator is entitled.

Respectfully submitted,

COOK LAW, PLLC

*/s/ David S. Cook*
David S. Cook
Texas Bar No. 00796391
211 W. 11th St.
Houston, Texas 77008
713.568.6511 (office)
713.574.2904 (fax)
dcook@cooklawpllc.net

## VERIFICATION

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

I, David S. Cook, Administrator, swear that the facts stated above are within my knowledge

and are true and correct, as far as known to me.

_____
David S. Cook, Cook Law, PLLC
Dependent Administrator


SWORN TO BEFORE ME on the 4th day of April 2022.

_____
Notary Public

CARMEN C. VASQUEZ
Notary Public, State of Texas
Comm. Expires 09-11-2022
Notary ID 131718685

# EXHIBIT A

Authentisign ID 0A6D769B-C143-EC11-5820-0050F210F5C6

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)



# ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)

NOTICE: Not For Use For Condominium Transactions

11-08-2021



**1. PARTIES:** The parties to this contract are _Estate of Ernest L Heimlich_
(Seller) and _Edmund Heimlich and/or assigns_ (Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements and accessories are collectively referred to as the Property (Property).
   A. LAND: Lot ___55___ Block ___24___, _____ Cimarron Sec 07 _____
   Addition, City of _____Katy_____, County of _____Harris_____,
   Texas, known as _806   Comstock Springs Dr_____ TX _77450-3217_
   (address/zip code), or as described on attached exhibit.
   B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.
   C. ACCESSORIES:  The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for:  (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.
   D. EXCLUSIONS: The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession:
   _____
   E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ..........................$ ____190,000.00____
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum,
      ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum .........$_____
   C. Sales Price (Sum of A and B) ...............................................................$ ____190,000.00____

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)
☐ A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.
☐ B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.
☐ C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is a party.
   ☐ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.
   ☐ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest money shall be refunded to Buyer.

Initialed for Identification by Buyer _EH_ _____ and Seller _____      TREC NO. 20-16
This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS      TXR 1601 🔲 TRANSACTIONS

Authentisign ID: 0A507998-C148-EC11-9320-C050F210F5C6

Contract Concerning   806  Comstock Springs Dr          Katy       TX  77455-3233  Page 2 of 11     11-09-2021
(Address of Property)

**5. EARNEST MONEY AND TERMINATION OPTION:**

   **A. DELIVERY OF EARNEST MONEY AND OPTION FEE:** Within 3 days after the Effective Date, Buyer must deliver to_____ Majestic Title _____, as escrow agent, at 24556 Kingsland Blvd.    Katy      TX  77494 (address): $_____1,900.00_____ as earnest money and $_____0.00_____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow agent and may be paid separately or combined in a single payment.

   (1) Buyer shall deliver additional earnest money of $_____ to escrow agent within _____ days after the Effective Date of this contract.

   (2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

   (3) The amount(s) escrow agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

   (4) Buyer authorizes escrow agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases escrow agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

   **B. TERMINATION OPTION:** For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within _____0_____ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and earnest money shall release any Option Fee remaining with escrow agent to Seller; and (ii) any earnest money will be refunded to Buyer.

   **C. FAILURE TO TIMELY DELIVER EARNEST MONEY:** If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

   **D. FAILURE TO TIMELY DELIVER OPTION FEE:** If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this paragraph 5.

   **E. TIME:** Time is of the essence for this paragraph and strict compliance with the time for performance is required.

**6. TITLE POLICY AND SURVEY:**

   **A. TITLE POLICY:** Seller shall furnish to Buyer at ☒Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by _____ Majestic Title _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

   (1) Restrictive covenants common to the platted subdivision in which the Property is located.

   (2) The standard printed exception for standby fees, taxes and assessments.

   (3) Liens created as part of the financing described in Paragraph 3.

   (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.

   (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

   (6) The standard printed exception as to marital rights.

   (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

   (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:

   ☒ (i) will not be amended or deleted from the title policy; or
   ☐ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer  ☐ Seller.

   (9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

   **B. COMMITMENT:** Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for identification by Buyer_____ and Seller_____                    TREC NO. 20-16

This form is authorized for use by Tricia L. Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS     TXR 1601    TRANSACTIONS

Authentisign ID: 0A807993-C148-EC11-6B20-0050F21CF5C6

Contract Concerning    806  Comstock Springs Dr            Katy        TX  77450-3217 Page 3 of 11        11-08-2021
                                    (Address of Property)

C. SURVEY: The survey must be made by a registered professional land surveyor, acceptable to
the Company and Buyer's lender(s). (Check one box only)
(1) Within ✱ ✱ ✱ ✱ days after the Effective Date of this contract, Seller shall furnish to Buyer and
Title Company Seller's existing survey of the Property and a Residential Real Property
Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). If Seller fails to
furnish the existing survey or affidavit within the time prescribed, Buyer shall
obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.
If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s),
Buyer shall obtain a new survey at ☐Seller's ☐Buyer's expense no later than 3 days prior to
Closing Date.
(2) Within ✱ ✱ ✱ ✱ days after the Effective Date of this contract, Buyer shall obtain a new survey
at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or
the date specified in this paragraph, whichever is earlier.
(3) Within ✱ ✱ ✱ ✱ days after the Effective Date of this contract, Seller, at Seller's expense shall
furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title:
disclosed on the survey other than items 6A(1) through (7) above; disclosed in the
Commitment other than items 6A(1) through (9) above;. or which prohibit the following use or
activity: Residential use
Buyer must object the earlier of (i) the Closing Date or (ii) ___7___ days after Buyer receives the
Commitment, Exception Documents, and the survey. Buyer's failure to object within the time
allowed will constitute a waiver of Buyer's right to object; except that the requirements in
Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to
incur any expense, Seller shall cure any timely objections of Buyer or any third party lender
within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be
extended as necessary. If objections are not cured within the Cure Period, Buyer may, by
delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this
contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If
Buyer does not terminate within the time required, Buyer shall be deemed to have waived the
objections. If the Commitment or Survey is revised or any new Exception Document(s) is
delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey
or new Exception Document(s) within the same time stated in this paragraph to make
objections beginning when the revised Commitment, Survey, or Exception Document(s) is
delivered to Buyer.

E. TITLE NOTICES:
   (1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the
   Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or
   obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly
   reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to
   object.
   (2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☒is ☐is not subject
   to mandatory membership in a property owners association(s). If the Property is subject to
   mandatory membership in a property owners association(s), Seller notifies Buyer under
   §5.012, Texas Property Code, that, as a purchaser of property in the residential community
   identified in Paragraph 2A in which the Property is located, you are obligated to be a
   member of the property owners association(s). Restrictive covenants governing the use and
   occupancy of the Property and all dedicatory instruments governing the establishment,
   maintenance, or operation of this residential community have been or will be recorded in
   the Real Property Records of the county in which the Property is located. Copies of the
   restrictive covenants and dedicatory instruments may be obtained from the county clerk.
   **You are obligated to pay assessments to the property owners association(s). The
   amount of the assessments is subject to change. Your failure to pay the
   assessments could result in enforcement of the association's lien on and the
   foreclosure of the Property.**
   Section 207.003, Property Code, entitles an owner to receive copies of any document that
   governs the establishment, maintenance, or operation of a subdivision, including, but not
   limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a
   property owners' association. A resale certificate contains information including, but not
   limited to, statements specifying the amount and frequency of regular assessments and the
   style and cause number of lawsuits to which the property owners' association is a party,
   other than lawsuits relating to unpaid ad valorem taxes of an individual member of the
   association. These documents must be made available to you by the property owners'
   association or the association's agent on your request.
   **If Buyer is concerned about these matters, the TREC promulgated Addendum for
   Property Subject to Mandatory Membership in a Property Owners Association(s)
   should be used.**
   (3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily
   created district providing water, sewer, drainage, or flood control facilities and services,

Initialed for Identification by Buyer _CH_  _____ and Seller _Act_ _____          TREC NO. 20-16
                                                                                    TXR 1601 (🌀) TRANSACTIONS

This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS

Authentisign ID: 0A307996-C148-EC11-9820-0050F21CF5C8

Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) **TIDE WATERS:** If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) **ANNEXATION:** If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) **PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:** Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(8) **TRANSFER FEES:** If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) **PROPANE GAS SYSTEM SERVICE AREA:** If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) **NOTICE OF WATER LEVEL FLUCTUATIONS:** If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**

A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. **SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice):** (Check one box only)
☐ (1) Buyer has received the Notice.
☐ (2) Buyer has not received the Notice.. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☒ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. **SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS** is required by Federal law for a residential dwelling constructed prior to 1978.

Initialed for identification by Buyer EH    and Seller UC

This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS

TRANSACTIONS

Authentisign ID: 0A807998-C148-EC11-9820-0050F215F5C0

| Contract Concerning  806  Comstock Springs Dr .    Katy    TX :'448-:'21' Page 5 of 11    11-08-2021 |
|---|

(Address of Property)

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
(Check one box only)
☒ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
_____
(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments.  At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $_____0.00_____.  Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.

**8. BROKERS AND SALES AGENTS:**

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: _____
_____

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

**9. CLOSING:**

A. The closing of the sale will be on or before _____January_____ ·19· , 20 22 · , or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

Initialed for identification by Buyer (EH)  _____  and Seller AC  _____

TREC NO. 20-16
TXR 1601

This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS

Authorisign ID 0A5D7B9B-C148-EC11-9820-0050F210F5C8

Contract Concerning   806  Comstock Springs Dr          Katy    TX 77450-3217 Page 6 of 11    11-08-2021
(Address of Property)

**10. POSSESSION:**
    A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒upon closing and funding ☐according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior  to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties.  Consult your insurance agent prior to change of ownership and possession **because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**
    B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
        (1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
        (2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale.  TREC rules prohibit  license holders from adding factual statements  or  business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)
    Seller agrees to give the buyer a 30-day extension to closing for a fee of $1000 should that be needed.

**12. SETTLEMENT AND OTHER EXPENSES:**
    A. The following expenses must be paid at or prior to closing:
        (1)    Expenses payable by Seller (Seller's Expenses): ·
            (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
            (b) Seller shall also pay an amount not to exceed $_____0.00_____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
        (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any· loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract. ·
    B. If any expense exceeds an amount expressly stated in this contract for·such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. ·If taxes for the current year vary·from the

Initialed for identification by Buyer **CH**  _____ and Seller **dc** _____          TREC NO. 20-16

This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc.  HLS          TXR 1601  TRANSACTIONS

Authentisign ID: 0A807958-C148-EC11-9820-0050F210F3C6

| Contract Concerning | 806 Comstock Springs Dr | Katy | TX 77450-3211 | Page 7 of 11 | 11-08-2021 |

(Address of Property)

amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**

A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. Escrow agent may require any disbursement made in connection with this contract to be conditioned on escrow agent's collection of good funds acceptable to escrow agent.

B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by escrow agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the

Initialed for Identification by Buyer _CH_ and Seller _ACK_    TREC NO. 20-16

This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS    TXR 1601  TRANSACTIONS

Authentisign ID: 0AB37B9B-C148-EC11-9820-0050F210F5C8

Contract Concerning **806 Comstock Springs Dr** **Katy** **TX** 77450-3317 Page 8 of 11   11-09-2021
(Address of Property)

Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

To Buyer at: 6410 Rancho Blanco Court    To Seller at: ~~806 Comstock Springs Dr~~ *211 W. 11th Street*

Houston TX 77083    ~~Katy~~ TX ~~77450-3317~~ *Houston 77008*

Phone: _____    Phone: *713.568.6511*

E-mail/Fax: ed44@att.net    E-mail/Fax: *dcook@cooklawplic.net*

E-mail/Fax: _____    E-mail/Fax: _____

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum
☐ Seller Financing Addendum
☒ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
☐ Buyer's Temporary Residential Lease
☐ Loan Assumption Addendum
☐ Addendum for Sale of Other Property by Buyer
☐ Addendum for Reservation of Oil, Gas and Other Minerals
☐ Addendum for "Back-Up" Contract
☐ Addendum for Coastal Area Property
☐ Addendum for Authorizing Hydrostatic Testing
☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal
☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease
☐ Short Sale Addendum
☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law
☐ Addendum for Property in a Propane Gas System Service Area
☐ Addendum Regarding Residential Leases
☐ Addendum Regarding Fixture Leases
☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment
☐ Other (list):

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's Attorney is: _____    Seller's Attorney is: _____

Phone: _____    Phone: _____

Fax: _____    Fax: _____

E-mail: _____    E-mail: _____

Initialed for Identification by Buyer (EH) _____ and Seller dc *   TREC NO. 20-16
This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS    TXR 1601

Authentisign ID: 0A80799B-C148-EC11-9820-005CF2I0F5C6

| Contract Concerning | 806 Comstock Springs Dr | Katy | TX 77450-1711 Page 9 of 11 | 11-08-2021 |

(Address of Property)

EXECUTED the _____ day of _____, 20____ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

COOK LAW, PLLC

Authentisign
_Edmund Heimlich and/or assigns_    11/18/2021        _David Cook_    Dependant
Buyer Edmund Heimlich and/or assigns          Seller Estate of Ernest L Heimlich

Administrator ✳

Buyer                                      . Seller

✳ subject to Court approval



The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-16. This form replaces TREC NO. 20-15.

TREC NO. 20-16
TXR 1601  TRANSACTIONS

This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS

Authentisign ID: 0A80709B-C148-EC11-8920-0050F210F1C6

Contract Concerning  806  Comstock Springs Dr         Katy      TX        Page 10 of 11    11-03-2021
                                              (Address of Property)

---

**BROKER INFORMATION**
(Print name(s) only. Do not sign)

N/A

| | |
|---|---|
| eXp Realty          603392 | Listing Broker Firm                    License No. |
| Other Broker Firm        License No. | |
| represents  ☒ Buyer only as Buyer's agent | represents  ☐ Seller and Buyer as an intermediary |
| ☐ Seller as Listing Broker's subagent | ☐ Seller only as Seller's agent |
| Tricia Turner        0425311 | Listing Associate's Name              License No. |
| Associate's Name        License No. | |
| the Tricia Turner Properties Group | Team Name |
| Team Name | |
| tricia@triciaturnerproportion.com  832-334-2671 | Listing Associate's Email Address         Phone |
| Associate's Email Address        Phone | |
| Licensed Supervisor of Associate    License No. | Licensed Supervisor of Listing Associate   License No. |
| 8030 FM 359 S., Suite B   832-334-2671 | Listing Broker's Office Address           Phone |
| Other Broker's Address         Phone | |
| Fulshear         TX    77441 | City                    State        Zip |
| City            State      Zip | |
| | Selling Associate's Name              License No. |
| | Team Name |
| | Selling Associate's Email Address         Phone |
| | Licensed Supervisor of Selling Associate  License No. |
| | Selling Associate's Office Address |
| | City                    State        Zip |

**Disclosure:** Pursuant to a previous, separate agreement (such as a MLS offer of compensation or other agreement between brokers), Listing Broker has agreed to pay Other Broker a fee (        $1000        ). This disclosure is for informational purposes and does not change the previous agreement between brokers to pay or share a commission.

Authorcsgn ID: 0A007095-C148-EC11-9820-0050F21CF5C8

Contract Concerning __806  Comstock Springs Dr__ __Katy__ __TX__ _77450-3317_ Page 11 of 11   11-03-2021
(Address of Property)

---

### OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

Escrow Agent _____   Date _____

---

### EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

| Escrow Agent Majestic Title | Received by | Email Address | Date/Time |
| 24556 Kingsland Blvd. | | | |

| Address | | | Phone |

| City Katy | State TX | Zip 77494 | Fax |

---

### CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

| Escrow Agent | Received by | Email Address | Date |

| Address | | | Phone |

| City | State | Zip | Fax |

---

### ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $_____ additional Earnest Money in the form of _____
is acknowledged.

| Escrow Agent | Received by | Email Address | Date/Time |

| Address | | | Phone |

| City | State | Zip | Fax |

Authentisign ID: 2B4A369C-F247-EC11-9820-0050F2101-5C6



PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)   11-10-2020

# ADDENDUM FOR PROPERTY SUBJECT TO MANDATORY MEMBERSHIP IN A PROPERTY OWNERS ASSOCIATION
### (NOT FOR USE WITH CONDOMINIUMS)
### ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT



806  Comstock Springs Dr                          Katy         TX  77450-1217
<div style="text-align:center">(Street Address and City)</div>

Austin Properties Inc.                                         281-634-0300
<div style="text-align:center">(Name of Property Owners Association, (Association) and Phone Number)</div>

**A. SUBDIVISION INFORMATION:** "Subdivision Information" means: (i) a current copy of the restrictions applying to the subdivision and bylaws and rules of the Association, and (ii) a resale certificate, all of which are described by Section 207.003 of the Texas Property Code.

**(Check only one box):**

☐ 1. Within _____ days after the effective date of the contract, Seller shall obtain, pay for, and deliver the Subdivision Information to the Buyer. If Seller delivers the Subdivision Information, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.  If Buyer does not receive the Subdivision Information, Buyer, as Buyer's sole remedy, may terminate the contract at any time prior to closing and the earnest money will be refunded to Buyer.

☐ 2. Within _____ days after the effective date of the contract, Buyer shall obtain, pay for, and deliver a copy of the Subdivision Information to the Seller.  If Buyer obtains the Subdivision Information within the time required, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.  If Buyer, due to factors beyond Buyer's control, is not able to obtain the Subdivision Information within the time required, Buyer may, as Buyer's sole remedy, terminate the contract within 3 days after the time required or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.

☐ 3. Buyer has received and approved the Subdivision Information before signing the contract. Buyer ☐ does ☐ does not require an updated resale certificate. If Buyer requires an updated resale certificate, Seller, at Buyer's expense, shall deliver it to Buyer within 10 days after receiving payment for the updated resale certificate from Buyer. Buyer may terminate this contract and the earnest money will be refunded to Buyer if Seller fails to deliver the updated resale certificate within the time required.

☒ 4. Buyer does not require delivery of the Subdivision Information.

**The title company or its agent is authorized to act on behalf of the parties to obtain the Subdivision Information ONLY upon receipt of the required fee for the Subdivision Information from the party obligated to pay.**

**B. MATERIAL CHANGES.** If Seller becomes aware of any material changes in the Subdivision Information, Seller shall promptly give notice to Buyer. Buyer may terminate the contract prior to closing by giving written notice to Seller if: (i) any of the Subdivision Information provided was not true; or (ii) any material adverse change in the Subdivision Information occurs prior to closing, and the earnest money will be refunded to Buyer.

**C. FEES AND DEPOSITS FOR RESERVES:** Except as provided by Paragraphs A and D, Buyer shall pay any and all Association fees, deposits, reserves, and other charges associated with the transfer of the Property not to exceed $ 300.00  and Seller shall pay any excess.

**D. AUTHORIZATION:** Seller authorizes the Association to release and provide the Subdivision Information and any updated resale certificate if requested by the Buyer, the Title Company, or any broker to this sale. If Buyer does not require the Subdivision Information or an updated resale certificate, and the Title Company requires information from the Association (such as the status of dues, special assessments, violations of covenants and restrictions, and a waiver of any right of first refusal), ☒ Buyer ☐ Seller shall pay the Title Company the cost of obtaining the information prior to the Title Company ordering the information.

**NOTICE TO BUYER REGARDING REPAIRS BY THE ASSOCIATION:** The Association may have the sole responsibility to make certain repairs to the Property. If you are concerned about the condition of any part of the Property which the Association is required to repair, you should not sign the contract unless you are satisfied that the Association will make the desired repairs.

| | |
|---|---|
| _Enollfield Hoinlich_ | _Cook LAG, PLLC_<br>_David Cook, Dependent_ |
| Buyer        Edmund Hoinlich and/or assigns | Seller        Estate of Ernest L Hoinlich<br>_Administrator  Subject to_ |
| | |
| Buyer | Seller        _Court approval_ |

The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only. TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (www.trec.texas.gov) TREC No. 36-9. This form replaces TREC No. 36-9.

TRANSACTIONS   TREC NO. 36-9
TXR 1922

# APPENDIX  B

FILED
12/7/2022 5:20 PM
Teneshia Hudspeth
County Clerk
Harris County - County Probate Court No. 1
Accepted By: JS

# NO. <u>495484-402</u>

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT |
| | § | |
| | § | |
| ERNEST L. HEIMLICH | § | NUMBER 1 |
| | § | |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## MOTION FOR ORDER FOR SPECIFIC PERFORMANCE,

## SUBJECT TO MOTION TO VACATE AND/OR CLARIFY

## ORDERS DATED APRIL 14, 2022

NOW COMES EDMUND HEIMLICH ("Mr. Heimlich"), and files this

motion for specific performance of the contract for sale of 806 Comstock Springs

Dr., Katy Texas, dated November 18, 2021. *See attached contract for sale of 806*

*Comstock Springs Dr., Katy, Texas.*  This contract and sale were approved by the

Court on February 22, 2022. *See attached court order.* Edmund Heimlich is entitled

to specific performance of the contract for sale due to David Cook's anticipatory

breach, promissory estoppel and quantum meruit / unjust enrichment.

The elements a of breach of contract claim are: "(1) a valid contract; (2) the

plaintiff performed or tendered performance; (3) the defendant breached the

contract; and (4) the plaintiff was damaged as a result of the breach." *Richter v.*

*Wagner Oil Co.,* <u>90 S.W.3d 890, 898</u> (Tex. App.-San Antonio 2002, no pet.). It is

undisputed that the contract between the parties was valid.

"The elements of promissory estoppel are: (1) a promise, (2) foreseeability of reliance on the promise by the promisor, and (3) substantial detrimental reliance by the promisee." *Hubbard v. Shankle*, 138 S.W.3d 474, 482 (Tex. App.-Fort Worth 2004, pet. denied); *see MCN Energy Enters., Inc. v. Omagro de Columbia, L.D.C.*, 98 S.W.3d 766, 774(Tex. App.-Fort Worth 2003, pet. denied).

Unjust enrichment exists when a party obtains a benefit from another by fraud, duress or taking an unfair advantage. "*Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) Because Plaintiff has established breach of contract, promissory estoppel and unjust enrichment, he is entitled to specific performance.

"Specific performance is the remedy of requiring exact performance of a contract in the specific form in which it was made." *Levetz v. Sutton*, 404 S.W.3d 798, 805 (Tex. App.-Dallas 2013, pet. denied). A trial court may award the equitable remedy of specific performance upon a showing of breach of contract. *Stafford v. S. Vanity Mag., Inc.*, 231 S.W.3d 530, 535 (Tex. App.-Dallas 2007, pet. denied). "A party who seeks specific performance must plead and prove (1) compliance with the contract, including tender of performance, unless excused by the defendant's breach or repudiation and (2) the readiness, willingness, and ability to perform at relevant times." *Hogan v. Goldsmith*, 533 S.W.3d 921, 923-

2

24 (Tex. App.-Eastland 2017, no pet.) (citing *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593-94, 601 (Tex. 2008)).

The evidence reveals that Heimlich tendered performance and detrimentally relied upon Cook's representations in spending over $40,000 to repair and rehab the property. David Cook committed an anticipatory breach when he refused to close after February 17, 2022—when the contract provided at least until February 19, 2022 to close. Furthermore, David Cook could not legally close until the Court signed the February 22, 2022 Order. Heimlich and DII fund were prepared to close on or before February 22, 2022. Under the circumstances, David Cook committed an anticipatory breach, which excused Heimlich's strict performance to closing deadlines and equity demands that the Court honor the Contract by extending the deadline for closing to occur.

The contract between Mr. Heimlich and the Estate entitled him to 90 days to close on the transaction. Mr. Heimlich performed and informed the Seller's personal representative 19 days before the conclusion of the 90 days that he had assigned the contract. See **Exhibit A-1 and A-2**, email exchange February 1, 2022. The Estate, by and through the personal representative, David S. Cook, announced to all before the 88th day, and again on the 89th day, and again on the 90th day following the date of the contract, he was refusing to comply with the terms of the contract and the order of the court approving the contract. **See Exhibit B-1,** email February 16, 2022

and **Exhibit B-2**, email February 17, 2022, **Exhibit B-3**, email February18, 2022.

**Exhibit B-3** also proves Mr. Heimlich was ready to close and had done all that was

required of him under the contract. The contract provided for Seller to close on or

before **February 19, 2022**.    See the **personal representative's Exhibit A, the**

**contract,** attached to his Motion to Expunge Notice of Lis Pendens, and attached

hereto as **Exhibit C**. Paragraph 15 of the contract entitles Mr. Heimlich to specific

performance. It is a contractual right.

     The incontrovertible facts are as follows:

1.     David S. Cook, as the representative of the Estate, entered a contract with Mr.

Heimlich for the sale of the property of the Estate of Ernest L. Heimlich at 806

Comstock Springs in Katy Texas. **Exhibit C.**

2.     The Probate Court with control of the Estate approved the contract and

ordered the sale to ***"Edmund Heimlich and/or assigns"***. **Exhibit D,** email from the

personal representative, February 14, 2022 and the order recorded in cause 495484

February 22, 2022.

3.     It was agreed and stipulated in the contract that Mr. Heimlich would have 60

days from the date of the contract to find a buyer to assign the contract to and, if

necessary, another 30 days upon giving notice in exchange for an increase of $1,000

in the purchase price. See paragraph 9A of **Exhibit C** stating: ***"The closing will be***

***on or before January 19, 2022, or within 2 days after objections made under***

Motion to Compel Specific Performance and Compel Compliance with Court Order

*Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to colose the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.*" And the extension provided for in the contract in Paragraph 11, titled **SPECIAL PROVISIONS**: *"Seller agrees to give the buyer a 30-day extension to closing for a fee of $1,000 should that be needed."* This extended the date to February 19, 2022.

4.    Paragraph 7A of the contract, titled **ACCESS**, states that **"Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times."** It is an incontrovertible fact of the law of the contract that Mr. Heimlich had the right to access the property, as did his agents.

5.    On February 1, 2022, Mr. Heimlich informed the Personal Representative that he had assigned the contract. See **Exhibit A-1 and A-2,** an email from the personal representative in response to a notice of the sale from Mr. Heimlich. The buyer was now DII fund. Mr. Heimlich had done all that was required of him under the contract and was ready to close.

6.    Mr. Heimlich informed the Personal Representative that his contract for assignment asked the buyer to close on or before February 17, 2022. See **Exhibit E,** email dated February 14, 2022. As this contract was between Mr. Heimlich and DII fund, it was Mr. Heimlich's prerogative, his right, to grant an extension on this date to DII Fund. Mr. Heimlich performed all that was required of him pursuant to the

5

verbal agreement and the written contract. Mr. Heimlich announced to the Personal Representative, and all others involved in the transaction, that he was ready to close before the 19th of February and again on the 19th of February.

7.     On February 16, 2022, the personal representative informed Mr. Heimlich he intended to default on the contract if Mr. Heimlich did not satisfy his demand for $3,250. **Exhibit F.** As the contract was now between the Estate and DII fund, Mr. Heimlich had no obligation to pay for another extension.

8.     Exhibits B-1, B-2, and B-3, emails from the personal representative dated February 16, 17, and 18th, 2022 prove the Seller, by and through the personal representative, defaulted on the contract before the Closing Date provided for in the contract. Paragraph 9A of Exhibit C.

9.     DII fund had until February 19, 2022, or within 7 days thereafter, or until any date following a reasonable extension beneficial to the parties, to close on the transaction.

10.    The Seller, David Cook committed an anticipatory breach when he refused to close after February 17, 2022.

11.    Paragraph 15 of the contract, titled **DEFAULT**, expressly grants Mr. Heimlich the right to specific performance: ***"If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both."***

12.    Mr. Heimlich contracted to buy the Property for $191,000, and he assigned the contract to DII fund for $269,500, in exchange for a promise from DII fund to pay Mr. Heimlich $79,500, at the closing.

13.    The difference between the original contract price of $191,000 and the price to DII fund is the improved value resulting from Mr. Heimlich's services. Mr. Heimlich provided a service to both the personal representative and the Estate by assuming the duty of care required of Cook, at the expense of the Estate, in § 351.101 of the Texas Estates Code.

14.    The personal representative testified he is aware of his duty, under § 351.101 of the Texas Estates Code, of care and to keep buildings of Estate property in good repair. See **page 127, lines 11-23**, of Exhibit F of the Supplement to Expunge Notice of Lis Pendens filed by the personal representative, the Court Reporters Record of Trial Court Cause No. 495484-401 April 13, 2022. The relevant page is attached to this Motion as **Exhibit G.**

15.    For his service of care for the property of the Estate with repairs required to alleviate the danger to the health, safety, and welfare of the public pending the sale of this property of the Estate Mr. Heimlich has a well-established legal right to the compensation he expected from specific performance by the Seller, by and through the personal representative of the Estate as the Seller. The elements of promissory estoppel and breach of contract have been satisfied.

Motion to Compel Specific Performance and Compel Compliance with Court Order

16.    By contracting to sell to "Ed Heimlich and/or assigns" Cook knew of Mr. Heimlich's plan and admitted to this while on the witness stand. See page 24, lines 11 – 14 where David Cooks states; *"And he included Ed Heimlich and assigns in the contract, which I agreed to because I believed he was going to broker the property. Take it, turn around and sell it for a profit to somebody else."* See Exhibit F of the Supplement to Expunge Notice of Lis Pendens filed by the personal representative, the Court Reporters Record of Trial Court Cause No. 495484-401 April 13, 2022.  The relevant page is attached to this Motion as **Exhibit H.**

## CONCLUSION AND PRAYER

Due to David Cook's anticipatory breach and repudiation of the contract, refusing to close after February 17, 2022, Cook's inability to close on the sale until he received the signed order approving it on February 22, 2022, and evidence proving Heimlich performed all obligations required under the contract—notifying Cook he was ready to close on or before February 22, 2022 Heimlich is entitled to specific performance. Alternatively and only to the extent that court does not find a breach of contract, Heimlich is entitled to specific performance under the doctrines of promissory estoppel and unjust enrichment / quantum meruit.

The settlement of the Estate requires the sale of the Property. Compliance with the order approving the sale to Edmund Heimlich and/or assigns is in the best

interest of the Estate. The contract gave Mr. Heimlich at least 97 days to close, but the personal representative put the Seller, the Estate, into default. Pursuant to the terms of the contract, Mr. Heimlich must be given 60 days the Seller contracted to give him to find another buyer to assign his contract to with the option of another 30 if needed to replace the buyer that he lost due to the Sellers Default.

Therefore, Mr. Heimlich moves the Court to order the Estate to perform pursuant to the original terms of the contract providing the 60 days contracted for to find a buyer by assignment with the option for an additional 30 days, if needed, in exchange for notice and a $1,000 increase in the purchase price setting the date for the closing to be 60 days from the signing of the order compelling the estate to comply with the Court's Order to sell the subject estate property to the First Reported Buyer as filed by David S. Cook as Dependent Administrator December 3, 2021 and for the Estate to pay all reasonable Attorney's fees and costs of this proceeding. This motion is filed subject to the court's ruling on Heimlich's Motion to vacate and/or clarify orders dated April 14, 2022.

Respectfully submitted,

*Candice Schwager*

Candice Schwager
SCHWAGER LAW FIRM
16807 Pinemoor Way
Houston, Texas 77058

9

(832) 857-7173
candiceschwager@outlook.com
**ATTORNEY FOR EDMUND HEIMLICH**

## CERTIFICATE OF SERVICE

I CANDICE SCHWAGER hereby certify that a true and correct copy of the foregoing motion was served on all counsel of record this 7th day of December 2022.

*Candice Schwager*

Candice Schwager

UNOFFICIAL COPY

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Candice Schwager on behalf of Candice Schwager
Bar No. 24005603
candiceschwager@outlook.com
Envelope ID: 70805473
Status as of 12/9/2022 8:41 AM CST

Associated Case Party: Edmund Heimlich

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Candice LeonardSchwager | | candiceschwager@icloud.com | 12/7/2022 5:20:29 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| JT JoshDeshong | | jt@joshdeshong.com | 12/7/2022 5:20:29 PM | SENT |
| Amy Pascalide | | Amy.Pascalide@Markel.com | 12/7/2022 5:20:29 PM | SENT |
| Mark Yablon | | mark@yablonlaw.com | 12/7/2022 5:20:29 PM | ERROR |

Associated Case Party: David Cook

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David SCook | | dcook@cooklawpllc.net | 12/7/2022 5:20:29 PM | SENT |

495484-402

## No. 495484

EDMUND HEIMLICH

V.

ESTATE OF ERNEST L. HEIMLICH

IN THE PROBATE COURT NO 1

OF BARRIS COUNTY, TEXAS

## LIST of EXHIBITS

**A-1** and **A-2:** email exchange February 1, 2022

B-1 email February 16, 2022 and B-2, email February 17, 2022, B-3, email February18, 2022.

C: The Contract for the sale of estate real property at 806 Comstock Springs in Katy Texas to Edmund Heimlich and/or assigns.

**D:** email from the personal representative, February 14, 2022 and the order recorded in cause 495484 February 22, 2022.

E: email dated February 14, 2022.

F: email of of February 16, 2022, commercial bribery demand.

G: page 127, lines 11-23, of the Court Reporters Record of Trial Court Cause No. 495484-401 April 13, 2022.

H: page 24, of the Court Reporters Record of Trial Court Cause No. 495484-401 April 13, 2022.

Re: Offer on 806 Comstock Springs

From: David Cook (dcook@cooklawpllc.net)

To: ed44@att.net

Cc: kristieseago@gmail.com; mseago@consolidated.net; jmak@cooklawpllc.net

Date: Tuesday, February 1, 2022 at 02:22 PM CST

Ed,

You cannot write on the contract that the sale is from the estate of your father, norme as dependent administrator. I cannot and will not participate in the sale, assignment or transfer of your interest.

David

On Tue, Feb 1, 2022 at 2:17 PM ed heimlich <ed44@att.net> wrote:
To Kristie & Michael Seago as my Agents,
And David Cook as Dependent Administrator of my Father's Estate;

I'm of the belief the Contract can be written with "Estate of Ernest Heimlich" showing as the Seller, providing that my purchase and assignment is mentioned in special provisions.

This will save me the expense of filing the contract for my purchase in the property records for my protection.

I suggest wording to this effect:

*Edmund Heimlich is assigning his contract to purchase this property in exchange for the difference in his purchase price and the sales price of this contract.*

With my printed name followed by space for my signature underneath.

David Cook can then sign the contract same as he did on the contract selling the property to me.

This should make for a smooth and easy transaction avoiding the creation of any potential clouds on the title.

I look forward to being presented with the contract for my signature in special provisions. This can come after both the final Buyer and David, as representative of the Estate, have signed.

It can then be presented in the Court for the submission currently scheduled for February 7.

- Ed Heimlich

A-2

## Re: Offer on 806 Comstock Springs

Fmm: David Cook (dcook@cooklawpllc.net)

To:    ed44@att.net

Cc:    kristieseago@gmail.com; mseago@consolidated.net; jmak@cooklawpllc.net

Date:  Tuesday, February 1, 2022 at 03:07 PM CST

Ed,

I am participating and will timley close (i.e., within the deadlines of our contract) on the contract I signed with you.

Ed, please don't call my office anymore. I would appreciate it if you only correspond in writing with me. Today, you called and berated two of my employees, telling them that you were going to take my license, and they will be out of work.

David

On Tue, Feb 1, 2022 at 2:53 PM ed heimlich <ed44@att.net> wrote:

> On Tuesday, February 1, 2022, 02:22:06 PM CST, David Cook <dcook@cooklawP-llc.net> wrote:
>
> Ed,
>
> You cannot write on the contract that the sale is from the estate of your father, nor me as dependent administrator. I cannot and will not participate in the sale, assignment or transfer of your interest.
>
> David
>
> XXXXXXXXXXXXXXXXXXX
>
> oavici-YOU **ALREADY HAVE** !!!
>
> You signed the contract that sells the property to:
>
> # Edmund Heimlich and/or assigns".
>
> And you filed it in the public record! It is in the Court Record and set for submission.
>
> Are you admitting that you did something illegal or unethical? Something you "cannot".
>
> Anybody can write any contract they want. Including me. Whether others choose to sign it is another matter.
>
> We can do it your way, if you like. You want to make this difficult?

UNOFFICIAL COPY

Comstock – No Second Extension Has Seen Granted

From: David Cook (dcook@cooklawpllc.net)

To: ed44@att.net

Cc: jmak@cooklawpllc.net; ktank@majtx.com; mseago@consolidated.net

Date: Wednesday, February 16, 2022 at 03:16 PM CST

Ed,

I never saw an assignee contract as I had requested; consequently, I will not allow any extension to the current EMC between me, as Administrator of the estate, and you (or your assignees).  By this email, I am informing the title company that if the closing does not occur timely (by end of day tomorrow), the EMC contract between me/the Estate (subject to court approval and the court has not yet approved of this contract, but the way) will be terminated.

Ed, I will *consider* granting you an extension for up to two weeks if you (i) agree to vacate Rancho Blanco immediately, (ii) actually immediately vacate Rancho Blanco and agree to never re-enter the property and agree to a liquidated damages clause that would allow me to charge further attorneys' fees to be allocated against you for any further eviction, and (iii) agree to allow my attorneys' fees seeking to acquire your eviction of Rancho Blanco to be allocated against your share of the estate. My current attorneys' fees and expenses related to the eviction are $3,250.  I need to know if you will agree to these terms by tomorrow at 10 am, and in such an event, I will not grant an extension unless you sign a written agreement and actually vacate Rancho Blanco by the end of the day tomorrow.

David

--
David S. Cook
Cook Law, PLLC
211 W. 11th Street
Houston, Texas 77008
Phone: 713.568.6511
Fax: 713.574.2904
dcook@cooklaYiLpllc.net

*BOARD CERTIFIED JN ESTATE PLANNING AND PROBATE LAW BY THE TEXAS BOARD OF LEGAL SPECIALIZATION*

CONFIDENTIALITY NOTICE: E-mail may contain confidential information that is legally protected. Do not read this e-mail if you are not the intended recipient. This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally protected. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail.

B-2

Re: Ready to Close on 806 Comstock Springs in Katy, Texas

From: David Cook (dcook@cooklawpllc.net)

To:     ed44@att.net

Cc:     mseago@consolidated.net; kristleseago@gmail.com; jmak@cooklawpllc.net; jkasischke@cooklawpllc.net

Date:  Thursday, February 17, 2022 at 06:34 PM CST

All,

My contract terminated today. No closing documents were signed by you, Ed, nor submitted to me. The close did not occur. I offered Ed a contract extension under favorable terms. He did not accept the terms; therefore, our contract is invalid. I won't be available tomorrow. I'll be out of the office. Have a good weekend.

David

Sent from my iPhone

On Feb 17, 2022, at 5:48 PM, ed heimlich <ed44@att.net> wrote:

Michael & Kristie Seago,
with e e to the Law Firm of David eook

Per my email early today to you and to Karen at the Tille Company.

**A Survey is not required for the Sale of Real Estate.**

A Survey is typically required for financing the purchase of Real Estate.
I agreed to a $13,500 reduction in price because this buyer is not financing the purchase.
I agreed to this to expedite the closing to meet the date set in the contract

**I am ready to close.**
**And,**
**I have done all that is required of me to close.**

The Buyer signed a contract on February 7th that states in Paragraph 6(C)(2):

*"Within 5 days after the Effective Date of this contract, Buyer shall obtain a new survey and Buyer's expense...*

That gave the Buyer until February 12th to order, and pay, for the Survey.

NOTE ALSO: The sale of the property is NOT contingent upon a survey that is satisfactory.

Therefore, if the closing does not take place before the date agreed upon in the contract I have assigned the failure is not due to any negligence or breach of contract on my part.

**I am ready to close.**

And;
**I have done all that is required of me to close.**

But as stated earlier today I will agree to an extension if David Cook will agree to an extension to allow for the survey to be completed before closing.

HOWEVER; It appears David Cook may not be ready to close as he has yet to provide an Order proving he seecures approval of the Ernest Money contract.

This is a matter beyond my control.

David Cook filed a "First Report of Sale of Real Property" in the case,
Cause No 495484,
**on December 3, 2021**
on a contract that was dated November 19 but not actually signed until some 4 days later due to repeated errors in the preparation of the contract by Tricia Turner's Assistant.

In that filing of record in the Court David Cook states in paragraph 4:

**"The sale is in the best interest of the Estate and exceeds the appraised value and the sale price obtained by the Guardian in the Guardianship".**

This is as true today as it was then.
The sale is in the best interest of the Estate.

The increase in the Sond the Judge required of David Cook indicates the Judge has approved the EM contract for the sale of 806 Comstock Springs.

However; it appears to me that David Cook needs to provide proof of this.
He needs to produce the Order.
His filings in the Court, including that of December 3rd, reference an "attached order".
But no such order was attached nor filed separately.
I know from experience with this Court that the Judge has instructed the Clerks to have the order filed separately.

I remain firm in my opinion the 'approval' can be found in the Letters of Administration.
That approval pre-dates the contract of record December 3, 2022.
But as David Cook included that statement under his signature, he should produce the order of approval before the date for which he has agreed to close.
That is; before February 19, 2022 (this Saturday).

As you know;
David previously said he would agree to up to a 2 week extension.
He stated his agreement to this without any condition other than producing a contract for my resale / assignment of the property.
Then at the last minute adds a demand unrelated to the property under contract.

As you know; it concerns another property owned by the Estate for the benefit of the beneficiaries, of which I am one,
is 6410 Rancho Blanco Court in Houston, Texas.
I believe my occupancy is legal.
According to David Cook that issue is now in litigation.

My occupancy is now a question for adjudication in whatever court it is now in.

That issue is immaterial and irrelevant to the sale of 806 Comstock Springs in Katy Texas.
I'm certain that no Judge and no Jury would find David Cooks objection to my occupancy of another property,
and refusal to agree to extension absent my vacating the property,
is just cause for refusing to perform on the contract he entered into for a different property.

Micheal - Kristie, as Listing Agent, and I assume you as you have acted as her partner in this Listing, are entitled to a 5% commission for making this sale happen.

Therefore you should be between me and David Cook.

But you asked me to reach out to David Cook and so now I have.

**I am ready to close.**
**And;**
**I have done all that is required of me to close.**

It is now up to the Buyer / Assignee and David Cook, as Administrator with the Fiduciary Duty to liquidate the Real Properties of the Estate,
to come to an agreement.

I expect the Listing and Buying Agents to facilitate this agreement to earn their $14,000 in commissions.

Nothing more is required of me and there is nothing more I will do
for the sale of 806 Comstock Springs in Katy Texas to
D Fund 11,LLC by assignment of David Cook's sale of the property,
as Administrator, of the Estate of Ernest L. Heimlich.

I see liability for both if they should fail to come to agreement.

Good Luck, Ed Heimlich

UNOFFICIAL COPY

B-3

Comstock

---

From:  David Cook (dcook@cooklawpllc.net)

To:    mseago@consolidated.net; ed44@att.net

Cc:    catheimlich@gmail.com; darciabland@gmail.com; arboard@msn.com; glahrman@gmail.com

Date:  Friday, February 18, 2022 at 03:49 PM CST

---

Ed and Michael,

I have changed the locks to Comstock. Do not attempt to access the property. You do not have authority to enter the residence nor the premises. Any access into the residence or on the premises will be considered a criminal trespass.

Michael, I have your sign and your lock box. They will be returned to you. Please remove the listing. Ed did not have authority to retain you as a broker to sell Comstock.

David
Sent from my iPhone



ID:0AII011t&C14S-EC1MI820-0050F21CF6C6

PROMULGATEO BY THE TEXAS REAL ESTATE COMMISSION (TREC)
ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)
NOTICE: Not For Use For Condominium Transactions

U•GS-2021

**TREC**



1. **PARTXES:** The parties to this contract are _t u_ 0₋¹>t_ n_ m ₒ u ₋t ₋i_____
(Seller) and _Edmund Heimlich and/or assigns_____ (Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** The land, improvements and accessories are collectively referred to as the Property (Property).
   A. **LANO:** Lot __55__ Block _____24____ . Ci01arron see 07
   Addition, City of _____xaty_____ , County of.___•_ Harris_____
   Texas, known as 806 conmtock spdnga Pr _____ TX ITD:Im_
   (address/zip code), or as described on attached exhibit.
   B. **IMPROVEMENTS:** The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following permanently installed and built-in items, if any: all equipment and appliances, valanees, screens, shutters, awnings, wall-to-wall carpeting, mirrors, eeiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting nxtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.
   e. **ACCESSOR.IES:** The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for: (I) garage doors, (11) entry gates, and (Ill) other improvements and accessories. "Controls" Ineiudes Seller's transferable rights to the (I) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.
   D. **EXCLUSIONS:** The following improvements and accessories will be retained by Seller and must be removed prior to delivery of possession: _____
   e. **RESERVATIONS:** Any reservation for Oil, gas, or other minerals, water, timber, or other irIterests is made in accordance with an attached addendum.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing ...................$_____190,000.00_
   B. Sum of all financing descrfbed in the attached: ☐ Third Party Financing Addendum,
      ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ..........$_____
   C. Sales Price (Sum of A and B) ₋ u, ₋,........ ₋, ........ ·.................$_____190,000.00_

4. **LEASES:** except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)
   ☐A. **RESIDENTIAL LEASES:** The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.
   ☐B. **FIXTURE LEASES:** Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.
   ae. **NATURAL RESOURCE LEASES:** "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource I ase affecting the Property to which Seller is a party.
      ☐(1) Seller has delivered to Buyer a copy of all thfl Natural Resource Leases.
      ☐(2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases. Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer may terminate the contract within _____ days after the date the Buyer receives all the Natural Resource Leases and the earnest *money* shall be refunded to Buyer.

Initialed for identification by Buyer _EH_ _ and Seller _A.C._

TREC NO. 20-16
TXR 1601 f>M,CJl,l?ll,S
1111o Crno la au\llotlaod fn ue• W tcu  { 'Ntnor, a oHbocr0>or .e ebe lIelInoa 11eal\ftra Information Service, Inc. w1S

Contract Concerning  806  Coutock Springs br        Katy    TX nm,Jm Page 2 of 11   II-08-2021
(Address of Pror,erty)

**5, EARNEST MONEY AND TERMINATION OPTION: ·**

A. OELIVERY OF EARNEST MONEV AND OPTION FEE: Within 3 days a er the Effective Date, Buyer must deliver to _____ Mniest.ic Title _____ as escrow agent, at 24556 Kingaland Blvd.     Katy     Ik    77494 (address): $ _____ 1,900.00 _____ as earnest money and $ _____ 0.00 _____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow agent and may be paid separately or combined in a single payment.

(1) Buyer shall deliver additional earnest money of $ _____ to _____ escrow _____ agent within _____ -days after the errective Oate of this coratract. •

(2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, sunday, or legal holiday, the time to deliver the earnest money Option Fee, or the additional earnest money, as applicable, is extended until the end of tne next day that is not a Saturday, Sunday, or legal holiday.

(3) The amountCs) escrow agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money,

(4) Buyer authorizes escrow agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases escrow agent from liability for delivery of the Option Fee to Seller. The Option Fee will ℮ credited to the Sales Price at closing.

B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer•s agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within --9,._ days after the Effective Oate of this contract (Option Period). Notiees under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (I) the Option Fee will not be retunded and escrow agent shall release any Option Fee remaining with escrow agent to Seller; and (II) any earnest money will .be refunded to Buyer.

C. FAILURE TO TIMELY DELIVER EARNEST MONEY: I Buyer fails to deliver the eamest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the eamest money.

D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or If Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this paragraph 5.

E, TIME: Time is of the essena, for this paragraph and strict compliance With the time for performance is required.

**6. TITLE POUCY AND SURVEY:**

A. m L E POUCY: Seller shall furnish to Buyer at lla Seller's C Buyer's expense ap owner policy of title insurance (Title Policy) issued by _____ Hajestic Title _____ (Title Company) in the amount of the Sales Price, dated at or after closing, Insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exdusions (including existing building and zoning ordinances) and the following exceptions:

(1) Restrictive covenants common to the platted subdivision in which the Property is located,

(2) The standard printed exception for standby fees, taxes and assessments.

(3) Liens created as part of the financing described in Paragraph 3.

(4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.

(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

(6) The standard printed exception as to marital rights.

(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

(8) The standard printed exception as to discrepancies, conflicts, shorti;iges in area or boundary lines, encroachments or protrusions, or overlapping improvements:
☐ will not be amended or deleted from the title poli ; or
☐ in will be amended to read, "shortages in area" at the expense of ☐ Buyer Cl Seller.

(9) lie exception or exclusion regarding minerais approved by the Texas Oepartment of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall rumish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Oocuments) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Oocuments to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception -Documents are not delivered to Buyer within title specified time, the time for delivery will be automatically extended up to 1S days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialled for Identification by Buyer _CH_ and Seller _____        TREC NO. 20-16
This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS        TXR 1601



Contract Concerning    806    Comstock springs Dr    Katy    TX nm-nn    Page 3 of 11    11-08-2021
(Address of Property)

6. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than Items 6A(1) through (7) above; disclosed in the Commitment other than Items 6A(1) through (9) above; or which prohibit the following use or activity: Residential use
Buyer must object the earlier of (i) the Closing Date or (ii) ___7___ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object except that the requirements in Schedule e of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception document(s) is delivered. Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. TITLE NOTICES:
(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.**
Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.
If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services,

Initialed for Identification by Buyer  EH  and Seller

This form is authorized for use by Tricia L Turner, a subscriber of the Houston Realtors Information Service, Inc. MLS

TREC NO. 20-16
TXR 1601    TRANSACTIONS

Authentisign ID: 0A807079-C148-EC11-8320-0050F21075C0 

Contract Concerning   806   Cometocit Springa Dr              Katy     TX  77493-7237 Page 4 of 11      11-09-2021
(Adctress of Property)

Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIOE WATERS:   If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract.   An addendum containing the notice promulgated by TREC or required b  the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code:  The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the eost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBUC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district1 Seller must give Buyer written notice as required by §5.014, Property Code. An adaendum containing the required notice shall be attached to this contract.

(8) TRANSFER FEES:  If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows:  The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code

(9) PROPANE GAS SYSTEM SERVICE AREA:  If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010r_Texas Utilities Code, An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the imp(?undment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

7, PROPERTY CONDITION:

A. ACCESS, INSPECTIONS AND UTIUTIES:  Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S OISCLOSURE NOTICE PURSVANT TO §5.005, TEXAS PROPERTY COOE (Notice): (Check one box only)

    1, Buyer has received the Notice.

8   2) Buyer has not received the Notice.  Within _____ days after the Effective Oate of this contract, Seller shall deliver the Notice to Buyer, it Buyer does not receive the Notice, euyer may terminate this contract at any time prior to ttie closing and the earnest money will be rerunded to Buyer. If Seller delivers the Notice, suyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.

    Iii (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASEO PAINT AND IE AD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior b  1978.

Initialed for identification by Buyer Ltff                and Seller /l)'--'''''          TREC NO. 20-16
aMb eoma I  outlllirhcd lor UIO i., 'l'dnia-L 'l'hrxx, a eubKribor of tJ., uauckuD Aoahoro Illt+ ioll  sarvleo, ''''' mS    TXR 1601 ftTIWUACTIONS



ID;0A8070SCI4&.ECIUl I0F a

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present ·condition of the Property with any. and all defects and without warranty except for the warranties of title and the warranties ln this contract. Buyer's agreement to accept the Property As ls under Paragraph 7D(l) or (2) does not preclude Buyer from lnspeeting the Property under Paragraph 7A, from negotiating repairs or treatments ln a subsequent amendment, or from terminating this contract during the Option ·Period, lf any.
(Check one box only)

fii (1) Buyer accepts the Property As ls.

Cl (2) Buyer accepts the Property As ls provided Seller, at Seller's exp nse, shall complete the following specific repairs and treatments: _____ •_____ —

(Do not lnsert general phrases, such as -.subject to lnspeetions" that do not identify specific repairs and treatments.)

E. LENDER. REQUIREO REPAIUS AND TREATMENTS: Unless otherwise agreed ln writing, neither 1>arty ls obligated to pay for lender required repairs, which lnefudes treatment \Or wood destroying lnsects. lf the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. lf the eost of lender required repairs and treatments e,cceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed ln writing: (l) Seller shall complete all agreed repairs and treatments prior to the Closing Date: and (lf) all required permits must be obtained, and repairs and treatments must be performeo by persons who are licensed to provide such repairs or treatments or,. lf no license ls required by law, are commercially engaged ln the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respeet to .the repairs and treatments will be transferred to Buyer at Buyer's expense. lf Seller falls to complete any agreed repairs and treatments prior to the Closing oate, Buyer may exercise remedies under Paragraph 15. or extend the Closing Date up to 5 oays ·r. necessary for Seller to complete the repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer ls advised that the presence of wetlands, toxic substances, lncluding asbestos and wastes or other environmental llazards, or the presence of a threatened or endangered species or.its habltat may affect Buyer's lntended use of the Property. ·rf Buyer ls concerned about these matters, an addendum promulgated by TREG or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential serviee contract from a residential servlee company. lf Buyer purchases a resfdential serviee contract, Seller shall relmburse Buyer at c:los,ng for the ·eost of the residel1tlal serviee contract ln an amount not exceeding $_____ o.oo____. Buyer should review any resldentiaf serviee contract for the scope of coverage, exclusions and flmltations. The purdlase of a residential serviee contract ls optlonal. Slmilar coverage may be purchased from various companles authorized to do.business ln Texas.

8. BROKERS AND SALES AGENTS:

A. BROKER OR SALES AGENT OISCLOSURE: Texas law re ulres a real estate broker or sales agent who ls a party to a transaction or acting on behalf of a spouse, parent, child, business entity ln which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or safes agent or the broker or sales agent's spouse, parent or child ls a beneflc;ary, to notify the other party ln wrtting before entering lnto a contract of sale. Disclose lf applicable:_____ —

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained ln separate·wrltten agreements.

9. CLOSING:

A. The closing of the sale will be on or before ____ January ____ 19__, 20 22 , or within 7 days after obJectlons made under Paragraph 6D have been cured or waived, whlchever date ls later (Closing Oate). lf either party falls to close the sale by the Closing Oate, the non-defaulting party may exercise the remecfles contained ln Paragrapti 15.

B. At closing:
(1) Seller shall e,cecute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted ln Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price ln good funds ao:eptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any nottees, statements,. certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the lssuance of the Title Policy,.
(4) There will .be no. llens, assessments, or security lnterests against the J.>roperty which will not be satisfied out of the sales proceeds unless. securing the ·payment of any loans assumed by Buyer and assumed loans will not be ln default.

AUW ID    . OA8G19!18CI4-EC11• 10FSCO

Contract Concerning  806  COMUtOCk Springs Dr            Katy        TX UOMJU Page 6 of 11    I-05-2021
(Address of Property)

**10. POSSESSION:**
 A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: (i)upon closing and funding ☐according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorize d by a written lease will establish a tenancy at sufferance relationship between the parties. Consult your insurance agent prior to change of ownership and possession because insuranea coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.
 B. SMART DEVICES: "Smart Device" means a device that connects to the Internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:
    (1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and
    (2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers,

**11. SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use,)
 Seller agrees to give the buyer a 30-day extension to closing for a fee of $1000 should that be needed,

**12. SETTLEMENT AND OTHER EXPENSES:**
 A. The following expenses must be paid at or prior to closing:
    (1)   Expenses payable by Seller (Seller's Expenses):
       (a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this con ract.
       (b) Seller shall also pay an amount not to exceed $ • 0.00 • to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
    (2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; l9an title policy with endo,:sements required by lender; loan-related inspectioo fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for •flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire tr nsfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
 B, If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date, Toe tax proration may be calailated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the

Initialed for Identification by Buyer Ltff•          and Seller m l /          TREC NO. 20•16
I'hU tora la authol'ized for vae by 7aJ,cla L 7ildim, a ab:GU'.licr iC the un,non 1:oah.ota lftfontatiGa Sttvico, tns. NO    TXR 1601 111TRANSACTIONS

Att1ffällgl  10 0401GS&C14aEC14-82000WZ10F5OG

Contract Concemtng  806  Co1l1st0ck Sp.t:ings Dr  .Katy .  .TX 1100-nn  Page 7 or 11  II-ONOZI
**(Address of Property)**

amount prorated at dosing, the parties shall adjust the prorations when tax statements for the cunent year are available. If taxes are not paid at or prior to dosing, Buyer shall pay taxes nor the a.irrent year.

14. **CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty a er the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possibiel but in any event by the Closing Date. If Seller fails to do so due to factors beyond Buyer's eontro, Buyer may (a) terminate this contract and the earnest money will be refuncied to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (e) accept the Property in its damagecl condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount or the deductible under the insurance policy. Seller's abiigations under this paragraph are independent of any other obligations of Seller under this contract.

15. **DEFAULT:** If Buyer fails to comply with this contract:tr Buyer will be in default, and Seller may (a) enforce specific performance, seek such other rel ef as may be provided by law, or both, or (b) terminate this contract and reeehte the earnest money as liquidated damages, thereby releasing both artles from this contract. If Seller fails to comply with this contract, Seher will be in defailt and Buyer may (a) enforce specific petformance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

16, **MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any disrute between Seller and Buyer related to this contract which is not resolved through informa discussion will be submitted to a mutually acceptable mediation servlee or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preeluele a party from seeking equitable relief from a court of competent Jurisdiction.:

17. **ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in anv legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

18, **ESCROW:**

A, **ESCROW:** The escrow agent is not (I) a party to this contract and does not have liability for the performance or nonperformance of any par:w to this contract, (11) liable for interest on the earnest money and (111) liable for the loss of any earnest money caused by the failure of anv financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. Escrow agent may require any disbursement made in connection with this contract to be conditioned on escrow agent's collection of good funds acceptable to escrow agent.

B, **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no ctosing occurs, escrow agent may (i) require a written release of liability of the escrow agent from all parties; and (11) require payment of unpaid expenses incurred on behalf of a pariy. Escrow agent may dedud authorized expenses from the earnest monev payable to a party. "Authorized expenses" means expenses incurred by escrow agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.

C. **DEMAND:** Upon termination of this contract, either party or the elicrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either palfy may make a written demand to the escrow agent for the earnest money. If only one party, makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand redueed by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent compiles with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

o. **DAMAGES:** Any party who wrongfully talis or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (I) damages; 0r3 the earnest money; (fn) reasonable attorney's fees; and (iv) all costs of suit.

E. **N TICES:** Escrow agent's notiees will be effective when sent in compliance with Paragraph 21. Notice c.f objection to the demand will be deemed effective upon receipt by escrow agent.

19, **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as derined by tnternal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a foreign person, then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applica p-tax law and deliver the same to the

Initialed for identification by Buyer (GH) _____ and Seller /AC _____

This form is authorized for use by Tricia L Turnor, a subscriber of the Houston Realtors Irformation Service, Inc. MLS
TXR 1601  TRANSACTIONS

10.    OA8>7MIB-CH8-IICU F2141FSCG

contract concerning   806   comstock springa Dr        l<aty    TK nm-uu Page 8 of u   aic 1 2021
(Address of Property)

Internai Revenue servlee together with appropriate tax forms, Internal Revenue Servlee ulations   require filing written reports If currency In excess. of specified amounts Is received In the transaction.

21. NOTICES: All notices from one party to the other must be In writing and are etrective when malled to, hand•delivered at, or transmitted by fax or electronic transml$$lOlJJL' flIOWf:

To Buyer at: _6410 Rancho Blanoo court_   To Seller at: _806—8911'8deo1,-spdnqa-er—_
_Houston        TX    77083_                          _TX  .J  :_

Phone: _____        Phone: _{b[s_____

E-mall/Fax: _____ed44@att.net_____   e-mall/Fax: _gc6o k.''':.0.pf/a4_14,Y1_ t J-

E•malVFax: _--------_          E-mall/Fax: _.....B-J:b e-bS/ l_

22. AGREEMENT OF PARTIES: This contract contains the entire agreement of the parties and cannot be changed except by their wrltten agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Thlnl Party Flnancing Addendum
☐ Seller Ftnancing Addendum
☐ lil Addendum for Property Subject to Mandatory Membershlp In a Property owners Association
☐ Buyer's Temporary Residential Lease
☐ Loan Assumption Addendum
☐ Addendum for Sale of Other Property by Buyer
☐ Addendum for Reservation of 011, Gas and Other Minerals
☐ Addendum for "Back•Up" Contract
☐ Addendum for Coastal Area Property
☐ Addendum for Authorizing Hydrostatlc Testing
☐ Addendum Concernlng Right to Terminate Oue to Lenaer's Appraisal
☐ Environmental Assessmen Threatened or Endangered Specles ana Wetlands Addendum

☐ Seller's Temporary Residential Lease
Q  Short Sale Addendum
☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
☐ Addendum for Seller's Olsclosure of Information on Lead-based Paint and Lead based Paint Hazar,ds as Required by Federal Law
☐ Addendum for Property In a Propane Gas System Servlee Area
☐ Addendum Regarding Residential Leases
☐ Addendum Regarding flxture Leases
☐ Addendum containlng Notice of Obligation to Pay lmprovement Dlstrict Assessment
☐ Other (11st):

23. CONSULT AN ATTORNEV BEFORE SIGNING: TREC rules prohlblt real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY,

Buyer's                           Seller's- •  :
Attorney ls: _ _ _ _ _ _ _ _ _   Attorney Is: _ fl-4- , .

Phone: _____           Phone: _____

Fax: _____             Fax: _____

E•mall: _____          E-mall: _____

Initialed for Identification by Buyer __ and Seller __    TREC NO. 20-16
TXR 1601 n _2_ s

DOCWD1999O48EC11402000502IOFGCO

Contract eoncening __806  Comstock  Springs  Dr_____ Katy____ TX  imMm   Page 9 of 11   (ea2021
                                        (Address of Property}

EXECUTED the .........day of.....................................,,,...... 20 __   (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Cook Law PLLC

uuRNHw/        11/18/2021        David Oh, Dependent
yer Edmund Hoiffilich and/or assigno       Seller Estate of Ernest L·Heinlich
                                          Gentle *Administrator*
                                    *Subject to court approval

_____        _____
Buyer                            Seller

The form of this contract hM been approved by the Texas Aeal Estate commtssion,    TREC forms are
intended for use only bv trained real estate license holders. No representation  is made as to the legal
validity  or adequacy of any provision  in anv speeinc transactions.  .It is not intended for complex
transactions. Texas Real Estate Commission, P.o. Box 12188, Austin, TX 78711-2188, (S12) 936-3000
(http://www.trec.texas.gov)   TREC NO. 20,16. This form replaces TREC NO. 20·1S,

TREC
TREC NO. 20·16
TXR1601 n ·f.!!S

thi1 Iom io •11 hlF.   tar·uo by Trloia r. '11mor,  4 oubocribor ot tf111 unuotoD  AHItom tnfo,...tloo Sorvico,  %/ao

Authentisign ID: 0A6070F9-C148-EC11-8320-0050F210F5C8

Contract Concerning __806 Comstock springs Dr_____ Katy_____ TI( nm-m, Page 10 of 11    U•0MOU
(Address et Property)

## BROKER INFORMATION
(Print name(s) only. Do not sign)

| | |
|---|---|
| __ex Realty__ __603392__ | Usting Broker Firm                          Ucense No. |
| dther Broker  ...                Ucense No. | |
| represents  ☒ Buyer only as Buyer's agent | represents  ☐ Sener and Buyer as an Intermediary |
| ☐ Seller as Usting Broker's subagent | ☐ Seller only as Seller's agent |
| __Tricia 'l'urner__ __042S311__ | |
| Associate's Name                      Ucense No. | Usting Associate's Name                  License No. |
| __the Tricia 'l'Urner Properties Group__ | |
| Team Name | Team Name |
| __tr1cia9tric1at:.ucnorprop0rtiea,co  832-334-2671__ | |
| Associate's Imall Address              Phone | Usting Associate's EirIail Address        Phone |
| Licensed 'supervllcr 'Of'Associate       Ucense No. | LTrensed 'Supervisor' of Listing Associate   Ucense No. |
| __8030 FM 359 S., Suite B  832-334-2671__ | |
| other Broker's Address5                Phone | Usting Broker's office Address            pho ne |
| :tily  __Fulshear__       TX  77441 | <ily                          State       zip |
|         State       Zip | |
| | Ilellng Associate's Name               Ucense No. |
| | team Nome |
| | selling Associate's email Address        Phone |
| | Dcens&l 'supervisor 'of Selling Associate  Ucense No. |
| | sillling Associate's ottI c Address |
| | citY                        state       zip |

Disclosure: Pursuant to a previous, separate agreement (such as a .MLS offer of compensation  or other agreement between brokers), Usting Bro er _____ : g.'rp ,,oses an l30  not change the previous agreement between brokers to pay or share a commission.

AuthenticSign ID: 6A3076G9-C149-EC11-9220-0050F21CF5C9

Contract concerning __806 Comstock Springs Dr_____ Katt____ TX 77449-3817 Page 11 of 11   11-05-2021
(Address Of Property)

## OPTION FEE RECEIPT'I'.
Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

TMAi•iii                                                              iffli

## !!ARNEST MONEV RECEJPT
Receipt of $____ Earnest Money in the form of _____
is acknowledged.

iiaOw>leiii Ha;teatic Ti't.le    icelvel 'ly'  i!m'iiiW   uiiliiiiiii
Address  24556 Ringeland Blvd.
ntz                    TX        17494
iiiiy           iiite            Zip

## COffflACT RICEIPT
Receipt of the Contract is acknowledged.

TIWOWipiii       iiicilwiil '&;'  iliiici)iliiclfess   Gite
lilaiiis                                              iiire
m;'             ii'ire          zip                   i'ix

## ADDMONAL !IARNEST MONEY RECL11PT
Receipt of $____ additional Earnest Money in the form of ____
is acknowledged.

iiciiwXiiiii      Received'ly'  iiiii 'Atess    iiceii1mi
m;;;;;                                          Jone
m;'             iiili           zp              iiii

TRec NO. 20•16
TI<R1601n

*D*

Re: WHY? Re: updates

From:   David Cook (dcook@cooklawpllc.net)

To:     ed44@att.net

Cc:     catheimlich@gmail.com; jmak@cooklawpllc.net; ccastro@cooklawpllc.com; glahrman@gmail.com;
        darciabland@gmail.com; arboard@msn.com

Date:   Monday, February 14, 2022 at 10:37 AM CST

All,

The judge ordered the increase of my bond in anticipation of the sale of Comstock.  When I take in more money on behalf of the estate, then my bond must increase. The judge was made aware of the sale of Comstock because we filed a motion asking the Court to approve of the sale.

David

On Mon, Feb 14, 2022 at 10:29 AM ed heimlich <ed44@att.net> wrote:

⌐  Why did the Judge order the bond be increased?
;  Has he last faith in the Administrator?
⌐  Does the Judge believe the Administrator is failing in the performance of his Fiduciary
⌐  Duties?
⌐  Has someone complained to the Judge?
⌐  I did not.
   But that does not mean I am displeased with the increase.
   It provides the heirs with additional coverage for malfeasance by the Administrator.

Comstock has been sold.

On Monday, February 14, 2022, 10:23:42 AM CST, Jerry Mak <jmak@cooklawP-Jjc.net> wrote:

Please find attached the increased bond ordered by the court that was filed today.

Regards,

Jerry S. Mak

Cook Law, PLLC

211 W. 11th Street

Houston, Texas 77008

Phone: 713.568.6519

Fax: 713.574.2904

jmak@cooklawP.llc.net



Re: Closing on Sale of 806 Comstock Springs

From: David Cook (dcook@cooklawpllc.net)

To: ed44@att.net

Cc: mseago@consolidated.net; kristieseago@gmail.com; ktank@majtx.com; jmak@cooklawpllc.net

Date: Monday, February 14, 2022 at 10:57 AM CST

All,

Thanks for the update.

It's in all of our best interests this sale close timely.

Thank you,

David

> On Feb 14, 2022, at 10:44 AM, ed heimlich <ed44@att.net> wrote:
>
> David -
> Please call Michael & the Title Company,
> if they don't call you,
> for an update.
> Negotiations were finalized late Friday.
> The buyer beat me up with the inspection report.
> Micheal helped negotiate a sale at a reduced price.
> Still all cash.
> Still same closing date - February 17th.
> This Thursday.
> It is my understanding that Michael still has some documents to prepare.
> As it is an assignment.
> But the sale is firm.
> - Ed
>
> On Monday, February 14, 2022, 10:38:34 AM CST, David Cook <dcook<@cooklawP-llc.net> wrote:
>
> I have not been informed of the closing. I don't think I have received a copy of the EMC with the assignees. Yes, I am prepared to move forward with the sale in accordance with our EMC.
>
> David
>
> On Mon, Feb 14, 2022 at 10:31 AM ed heimlich <ed44@aH.net> wrote:
>> Michael & Kristie -
>>
>> Have you informed the Administrator of the sale of
>> 806 Comstock Springs?
>>
>> Kellie - Will the closing take place on the day specified in the contract?

Fwd: Another lie/ misrepresention by David Cook?

From: David Cook (dcook@cooklawpllc.net)

To: darciabland@gmail.com; arboard@msn.com; catheimlich@gmail.com; glahrman@gmail.com; ed44@att.net

Date: Sunday, February 20, 2022 at 01:05 PM CST

FYI

Sent from my iPhone

Begin forwarded message:

> From: ed heimlich <ed44@att.net>
> Date: February 20, 2022 at 12:56:00 PM CST
> To: David Cook <dcook@cooklawpllc.net>, Jerry Mak <jmak@cooklawpllc.net>,
> jkasischke@cooklawpllc.net
> **Subject: Another lie / misrepresention by David Cook?**

David -

You claim your "current attorneys' fees and expenses related to the eviction are $3,250".

The docket does not show that you filed for, nor that the Judge gave you permission to impose attorney's fees upon the Estate.

You claimed the Attorneys fees and expenses to recover what Darcia owes the Estate for the almost $20,000 in insurance payments for the winter storm would be too much.

But then bring an unnecessary suit for eviction upon me.

Texas Estates requires:
1 - That any administrator FIRST get permission before making any promise of payment (conveyance) of Attorneys' fees and expenses on behalf of the Estate; and
2 - The benefit to the Estate.

There is no possible way the Estate can benefit from my eviction. And even if it could; the benefits would not outweigh the cost.

See. 351.152. CONTINGENT INTEREST FOR CERTAIN ATTORNEY'S FEES; COURT APPROVAL.

(e) In approving a contract or conveyance under this section, the court shall consider:

UNOFFICIAL COPY

(1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal serviees properly;

(2)  the fee customarily charged in the locality for similar legal serviees;

(3)  the value .of the property recovered or sought to be recovered by the personal representative under this subchapter;

(4)  the benefits to the estate that the attorney will be responsible for securing; and

(5)  the experience and ability of the attorney who will perform the serviees.


On Wednesday, February 16, 2022, 03:16:38 PM CST, David Cook <dcook@cooklawpllc.net> wrote

Ed,

I never saw an assignee contract as I had requested; consequently, I will not allow any extension to the current EMC between me, as Administrator of the estate, and you (or your assignees).  By this email, I am informing the title company that if the closing does not occur timely (by end of day tomorrow), the EMC contract between me/the Estate (subject to court approval, and the court has not yet approved of this contract, but the way) will be terminated.

Ed, I will *consider* granting you an extension for up to two weeks if you (i) agree to vacate Rancho Blaneo immediately, (ii) actually immediately vacate Rancho Blanco and agree to never re-enter the property and agree to a liquidated damages clause that would allow me to charge further attorneys' fees to be allocated against you for any further eviction, and (iii) agree to allow my attorneys' fees seeking to acquire your eviction of Rancho Blanco to be allocated against your share of the estate.  My current attorneys' fees and expenses related to the eviction are $3,250.  I need to know if you will agree to these terms by tomorrow at 10 am, and in such an event, I will not grant an extension unless you sign a written agreement and actually vacate Rancho Blanco by the end of the day tomorrow.

David

David S. Cook
Cook Law, PLLC
211 W. 11th Street
Houston, Texas 77008
Phone: 713.568.6511
Fax: 713.574.2904
dcook(@cook1aw12lk:.net


*BOARD CERTIFIED IN ESTATE PLANNING AND PROBATE LAW BY THE TEXAS BOARD OF LEGAL SPECIALIZATION*

CONFIDENTIALITY NOTICE: E-mail may contain confidential infonnation that is legally protected. Do not read this e-mail if you are not the intended recipient. This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential infotmation that is legally protected. If you are not the intended recipient or a person responsible for delivering it to the

1        MR. HEIMLICH:  Yes, Your Honor.

2        Okay.  I found it.  This is the Texas

3  Estates Code, possession of care of estate property.

4        MS. KASISCHKE:  I'm going to object to

5  this.  It's just a printout of the code section, Your

6  Honor.  It's --

7        THE COURT:  The Court is aware of the law,

8  Mr. Heimlich.  If you have questions of Mr. Cook, please

9  ask them.

10        MR. HEIMLICH:  All right.

11      Q.  (By Mr. Heimlich) Mr. Cook, are you aware of

12  Estates Code Subchapter C, Section 351.101, duty of

13  care?

14      A.  Have I read that report?

15      Q.  Yes.

16      A.  Yes, I have.

17      Q.  And it does say that the administrator shall

18  take care of estate property as a prudent person would?

19      A.  I think that's what teBtified --

20      Q.  Keep those buildings in --

21      A.  -- to earlier, as a prudent would.  That's

22  right.

23      Q.  -- good repair.

24        MR. HEIMLICH:  Okay.  All right.  Now, I'd

25  like to submit this email.

1          In addition, Ed is claiming for unjust

2   enrichment or quantum meruit. Ed Heimlich never had a

3   right to possession of Comstock property.  When I took

4   possession of it, I told everybody I'm changing the

5   locks.  I changed the locks.  I made sure nobody would

6   go in it.  Thereafter, I signed a contract with Ed

7   Heimlich.  Part of our negotiations, he said, well, what

8   I want to do is, I would like to take possession before

9   we close.  I said no, you can't do that.  You have to

10  sell it first.

11          And he included Ed Heimlich and assigns in

12  the contract, which I agreed to because I believed he

13  was going to broker the property.  Take it, turn around

14  and sell it for a profit to somebody else.  I never gave

15  him the right to possess the property, never gave him

16  the right to access it, never gave him the right to list

17  it, to show it.  And, in fact, what happened was he did

18  go in during this period of time --

19          Oh, and one other important fact is as part

20  of the original contract, Mr. Heimlich wanted to add an

21  addendum that it would grant him possession.  I said no,

22  I'm not going to sign anything that gives you possession

23  because there's all kinds of problems that could arise

24  as part of that.  And we had an email exchange and Ed

25  Heimlich said, David doesn't want possession.  He wants

495484-402

FILED
02/23/2022 11:53:41 AM
Teneshia Hudspeth
County Clerk
Harris County, Texas
Harris County - County Probate Court No. 1

NO. 495484

| | | |
|---|---|---|
| ESTATE OF | § | IN THE PROBATE COURT NO. 2 |
| | § | |
| ERNEST L. HEIMLICH, | § | OF |
| | § | |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## Order Approving Sale of Real Property

ON THIS DAY the Court heard and considered the First Report of Sale of Real Property ("the Report") filed by David S. Cook, Dependent Administrator, and the Court finds that at least five (5) days have expired since the filing of the Report; that the current bond is sufficient and no additional bond is needed to protect the Estate and is in compliance with the Court's previous Order for Sale of Real Property and with the law; that the real property has been sold at a private sale for a fair and reasonable price; and that such sale was properly made and in conformity with the law. Such property is described as follows: **806 Comstock Springs Drive, Katy, TX 77450, more fully described as: LT 55 BLK 24 CIMARRON SEC 7 in Harris County, Texas.**

IT IS ORDERED and DECREED that the sale described in the Report is hereby APPROVED and conveyance of the property is authorized upon compliance by the Purchaser with the terms of sale, which sale is to be for cash.

Signed On 02/22/2022
4:22:29 PM

_Michael Newman_
JUDGE PRESIDING

PR

**APPROVED AS TO FORM:**

**COOK LAW, PLLC**

*/s/ David S. Cook*
David S. Cook
Texas Bar No. 00796391
211 W. 11th St.
Houston, Texas 77008
Phone: (713) 568-6520
Fax: (713) 574-2904
dcook@cooklawpllc.net
**DEPENDENT ADMINISTRATOR**

UNOFFICIAL COPY

1

# APPENDIX  C



11-08-2021

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)
## ONE TO FOUR FAMILY RESIDENTIAL CONTRACT (RESALE)
NOTICE:  Not For Use For Condominium Transactions



**1. PARTIES:** The parties to this contract are ESTATE OF ERNEST L HEIMLICH
(Seller) and D Fund II, LLC _____ (Buyer).
Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

**2. PROPERTY:** The land, improvements and accessories are collectively referred to as the Property (Property).
A. LAND: Lot 55 _____ Block 24 _____ , CIMARRON SEC 7
Addition, City of Katy _____ , County of HARRIS _____ ,
Texas, known as 806 Comstock Springs Drive, Katy, Texas 77450-3217 _____
(address/zip code), or as described on attached exhibit.
B. IMPROVEMENTS: The house, garage and all other fixtures and improvements attached to the above-described real property, including without limitation, the following **permanently installed and built-in items,** if any: all equipment and appliances, valances, screens, shutters, awnings, wall-to-wall carpeting, mirrors, ceiling fans, attic fans, mail boxes, television antennas, mounts and brackets for televisions and speakers, heating and air-conditioning units, security and fire detection equipment, wiring, plumbing and lighting fixtures, chandeliers, water softener system, kitchen equipment, garage door openers, cleaning equipment, shrubbery, landscaping, outdoor cooking equipment, and all other property attached to the above described real property.
C. ACCESSORIES:  The following described related accessories, if any: window air conditioning units, stove, fireplace screens, curtains and rods, blinds, window shades, draperies and rods, door keys, mailbox keys, above ground pool, swimming pool equipment and maintenance accessories, artificial fireplace logs, security systems that are not fixtures, and controls for:  (i) garage doors, (ii) entry gates, and (iii) other improvements and accessories. "Controls" includes Seller's transferable rights to the (i) software and applications used to access and control improvements or accessories, and (ii) hardware used solely to control improvements or accessories.
D. EXCLUSIONS: The following improvements and accessories will  be  retained  by  Seller  and must be removed prior to delivery of possession: _____
_____ .
E. RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

**3. SALES PRICE:**
A. Cash portion of Sales Price payable by Buyer at closing .......................... $283,000.00 _____
B. Sum of all financing described in the attached: ❑   Third Party Financing Addendum,
   ❑   Loan Assumption Addendum, ❑   Seller Financing Addendum .......... $N/A. _____
C. Sales Price (Sum of A and B) ............................................................. $283,000.00 _____

**4. LEASES:** Except as disclosed in this contract, Seller is not aware of any leases affecting the Property. After the Effective Date, Seller may not, without Buyer's written consent, create a new lease, amend any existing lease, or convey any interest in the Property. (Check all applicable boxes)
❑A. RESIDENTIAL LEASES: The Property is subject to one or more residential leases and the Addendum Regarding Residential Leases is attached to this contract.
❑B. FIXTURE LEASES: Fixtures on the Property are subject to one or more fixture leases (for example, solar panels, propane tanks, water softener, security system) and the Addendum Regarding Fixture Leases is attached to this contract.
❑C. NATURAL RESOURCE LEASES: "Natural Resource Lease" means an existing oil and gas, mineral, water, wind, or other natural resource lease affecting the Property to which Seller is  a party.
   ❑ (1) Seller has delivered to Buyer a copy of all the Natural Resource Leases.
   ❑ (2) Seller has not delivered to Buyer a copy of all the Natural Resource Leases.  Seller shall provide to Buyer a copy of all the Natural Resource Leases within 3 days after the Effective Date. Buyer  may terminate the contract within _____ days  after  the  date  the  Buyer receives all the Natural Resource Leases and  the  earnest  money  shall  be  refunded to Buyer.

Initialed for identification by Buyer JP _____ and Seller EH _____          TREC NO. 20-16

Contract Concerning 806 Comstock Springs Drive, Katy, Texas 77450-3217      Page 2 of 11    11-08-2021

(Address of Property)

## 5. EARNEST MONEY AND TERMINATION OPTION:

A. DELIVERY OF EARNEST MONEY AND OPTION FEE: Within 3 days after the Effective Date, Buyer must deliver to Majestic Title _____, as escrow agent, at _____ 24556 Kingsland Blvd, Katy, TX 77494 (address): $3000.00 as earnest money and $200.00 _____ as the Option Fee. The earnest money and Option Fee shall be made payable to escrow agent and may be paid separately or combined in a single payment.

(1) Buyer shall deliver additional earnest money of $_____ to escrow agent within _____ days after the Effective Date of this contract.

(2) If the last day to deliver the earnest money, Option Fee, or the additional earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money, Option Fee, or the additional earnest money, as applicable, is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.

(3) The amount(s) escrow agent receives under this paragraph shall be applied first to the Option Fee, then to the earnest money, and then to the additional earnest money.

(4) Buyer authorizes escrow agent to release and deliver the Option Fee to Seller at any time without further notice to or consent from Buyer, and releases escrow agent from liability for delivery of the Option Fee to Seller. The Option Fee will be credited to the Sales Price at closing.

B. TERMINATION OPTION: For nominal consideration, the receipt of which Seller acknowledges, and Buyer's agreement to pay the Option Fee within the time required, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within __5__ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If Buyer gives notice of termination within the time prescribed: (i) the Option Fee will not be refunded and escrow agent shall release any Option Fee remaining with escrow agent to Seller; and (ii) any earnest money will be refunded to Buyer.

C. FAILURE TO TIMELY DELIVER EARNEST MONEY: If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money.

D. FAILURE TO TIMELY DELIVER OPTION FEE: If no dollar amount is stated as the Option Fee or if Buyer fails to deliver the Option Fee within the time required, Buyer shall not have the unrestricted right to terminate this contract under this paragraph 5.

E. TIME: **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

## 6. TITLE POLICY AND SURVEY:

A. TITLE POLICY: Seller shall furnish to Buyer at ☒ Seller's ☐ Buyer's expense an owner policy of title insurance (Title Policy) issued by Majestic Title _____ (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:

(1) Restrictive covenants common to the platted subdivision in which the Property is located.

(2) The standard printed exception for standby fees, taxes and assessments.

(3) Liens created as part of the financing described in Paragraph 3.

(4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.

(5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.

(6) The standard printed exception as to marital rights.

(7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.

(8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:

☐ (i) will not be amended or deleted from the title policy; or

☒ (ii) will be amended to read, "shortages in area" at the expense of ☐ Buyer ☒ Seller.

(9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.

B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

Initialed for Identification by Buyer _JP_ _____ and Seller _EH_ _____      TREC NO. 20-16

Contract Concerning 806 Comstock Springs Drive, Katy, Texas 77450-3217    Page 3 of 11    11-08-2021
(Address of Property)

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

☐(1) Within _____ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐Seller's ☐Buyer's expense no later than 3 days prior to Closing Date.

☒(2) Within 5_____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐(3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; disclosed in the Commitment other than items 6A(1) through (9) above; or which prohibit the following use or activity: In the event there are EXISTING, PENDING OR PROPOSED leasing restrictions, the buyer can terminate this contract up until the date of closing. Buyer must object the earlier of (i) the Closing Date or (ii) 5_____ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived by Buyer. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☒is ☐is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2A in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, or operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.** Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request. **If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association(s) should be used.**

(3) STATUTORY TAX DISTRICTS: If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services,

Contract Concerning 806 Comstock Springs Drive, Katy, Texas 77450-3217      Page 4 of 11    11-08-2021
(Address of Property)

Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) TIDE WATERS: If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) ANNEXATION: If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER: Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) PUBLIC IMPROVEMENT DISTRICTS: If the Property is in a public improvement district, Seller must give Buyer written notice as required by §5.014, Property Code. An addendum containing the required notice shall be attached to this contract.

(8) TRANSFER FEES: If the Property is subject to a private transfer fee obligation, §5.205, Property Code, requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(9) PROPANE GAS SYSTEM SERVICE AREA: If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(10) NOTICE OF WATER LEVEL FLUCTUATIONS: If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

## 7. PROPERTY CONDITION:

A. ACCESS, INSPECTIONS AND UTILITIES: Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Any hydrostatic testing must be separately authorized by Seller in writing. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.

B. SELLER'S DISCLOSURE NOTICE PURSUANT TO §5.008, TEXAS PROPERTY CODE (Notice): (Check one box only)
☒ (1) Buyer has received the Notice.
☐ (2) Buyer has not received the Notice. Within _____ days after the Effective Date of this contract, Seller shall deliver the Notice to Buyer. If Buyer does not receive the Notice, Buyer may terminate this contract at any time prior to the closing and the earnest money will be refunded to Buyer. If Seller delivers the Notice, Buyer may terminate this contract for any reason within 7 days after Buyer receives the Notice or prior to the closing, whichever first occurs, and the earnest money will be refunded to Buyer.
☐ (3) The Seller is not required to furnish the notice under the Texas Property Code.

C. SELLER'S DISCLOSURE OF LEAD-BASED PAINT AND LEAD-BASED PAINT HAZARDS is required by Federal law for a residential dwelling constructed prior to 1978.

Initialed for identification by Buyer _JP_ _____ and Seller _EH_ _____     TREC NO. 20-16

Contract Concerning 806 Comstock Springs Drive, Katy, Texas 77450-3217     Page 5 of 11   11-08-2021

(Address of Property)

D. ACCEPTANCE OF PROPERTY CONDITION: "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7D(1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.
   (Check one box only)
☒ (1) Buyer accepts the Property As Is.
☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____
   _____
   (Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

E. LENDER REQUIRED REPAIRS AND TREATMENTS: Unless otherwise agreed in writing, neither party is obligated to pay for lender required repairs, which includes treatment for wood destroying insects. If the parties do not agree to pay for the lender required repairs or treatments, this contract will terminate and the earnest money will be refunded to Buyer. If the cost of lender required repairs and treatments exceeds 5% of the Sales Price, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

F. COMPLETION OF REPAIRS AND TREATMENTS: Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days if necessary for Seller to complete the repairs and treatments.

G. ENVIRONMENTAL MATTERS: Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

H. RESIDENTIAL SERVICE CONTRACTS: Buyer may purchase a residential service contract from a residential service company. If Buyer purchases a residential service contract, Seller shall reimburse Buyer at closing for the cost of the residential service contract in an amount not exceeding $ N/A_____. Buyer should review any residential service contract for the scope of coverage, exclusions and limitations. **The purchase of a residential service contract is optional. Similar coverage may be purchased from various companies authorized to do business in Texas.**

## 8. BROKERS AND SALES AGENTS:

A. BROKER OR SALES AGENT DISCLOSURE: Texas law requires a real estate broker or sales agent who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the broker or sales agent owns more than 10%, or a trust for which the broker or sales agent acts as a trustee or of which the broker or sales agent or the broker or sales agent's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable:_____
   Josh DeShong is a principal in D Fund II, LLC and Josh DeShong Real Estate and is a licensed broker in Texas.      .

B. BROKERS' FEES: All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

## 9. CLOSING:

A. The closing of the sale will be on or before FEBRUARY 17TH_____, 20 22___, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.

B. At closing:
   (1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
   (2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
   (3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
   (4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

Initialed for identification by Buyer JP _____ and Seller CH _____     TREC NO. 20-16

Contract Concerning 806 Comstock Springs Drive, Katy, Texas 77450-3217_____Page 6 of 11   11-08-2021
(Address of Property)

## 10. POSSESSION:

A. BUYER'S POSSESSION: Seller shall deliver to Buyer possession of the Property in its present or required condition, ordinary wear and tear excepted: ☒upon closing and funding ☐according to a temporary residential lease form promulgated by TREC or other written lease required by the parties. Any possession by Buyer prior to closing or by Seller after closing which is not authorized by a written lease will establish a tenancy at sufferance relationship between the parties. **Consult your insurance agent prior to change of ownership and possession because insurance coverage may be limited or terminated. The absence of a written lease or appropriate insurance coverage may expose the parties to economic loss.**

B. SMART DEVICES: "Smart Device" means a device that connects to the internet to enable remote use, monitoring, and management of: (i) the Property; (ii) items identified in any Non-Realty Items Addendum; or (iii) items in a Fixture Lease assigned to Buyer. At the time Seller delivers possession of the Property to Buyer, Seller shall:

(1) deliver to Buyer written information containing all access codes, usernames, passwords, and applications Buyer will need to access, operate, manage, and control the Smart Devices; and

(2) terminate and remove all access and connections to the improvements and accessories from any of Seller's personal devices including but not limited to phones and computers.

## 11. SPECIAL PROVISIONS: (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum, lease or other form has been promulgated by TREC for mandatory use.)

If closing documents are not received by 12pm on the day of closing, closing will be extended to the following business day.

## 12. SETTLEMENT AND OTHER EXPENSES:

A. The following expenses must be paid at or prior to closing:

(1) Expenses payable by Seller (Seller's Expenses):

(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.

(b) Seller shall also pay an amount not to exceed $ NA_____ to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.

(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.

B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

## 13. PRORATIONS: Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the

Initialed for identification by Buyer JP _____ and Seller EH _____          TREC NO. 20-16

Contract Concerning 806 Comstock Springs Drive, Katy, Texas 77450-3217       Page 7 of 11   11-08-2021
(Address of Property)

amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
   A. ESCROW: The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent. Escrow agent may require any disbursement made in connection with this contract to be conditioned on escrow agent's collection of good funds acceptable to escrow agent.
   B. EXPENSES: At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow agent may: (i) require a written release of liability of the escrow agent from all parties; and (ii) require payment of unpaid expenses incurred on behalf of a party. Escrow agent may deduct authorized expenses from the earnest money payable to a party. "Authorized expenses" means expenses incurred by escrow agent on behalf of the party entitled to the earnest money that were authorized by this contract or that party.
   C. DEMAND: Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.
   D. DAMAGES: Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.
   E. NOTICES: Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

**19. REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

**20. FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the

Initialed for identification by Buyer [JP] _____ and Seller [CH] _____                TREC NO. 20-16

Contract Concerning 806 Comstock Springs Drive, Katy, Texas 77450-3217     Page 8 of 11    11-08-2021
(Address of Property)

Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

**21. NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer at: | Josh DeShong | To Seller at: | |
|---|---|---|---|
| CC: John Prather | | | |
| Phone: | (512 )590-3843 | Phone: | ( ) |
| E-mail/Fax: | jt@joshdeshong.com | E-mail/Fax: | |
| E-mail/Fax: | | E-mail/Fax: | |

**22. AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (Check all applicable boxes):

☐ Third Party Financing Addendum

☐ Seller Financing Addendum

☒ Addendum for Property Subject to Mandatory Membership in a Property Owners Association

☐ Buyer's Temporary Residential Lease

☐ Loan Assumption Addendum

☐ Addendum for Sale of Other Property by Buyer

☐ Addendum for Reservation of Oil, Gas and Other Minerals

☐ Addendum for "Back-Up" Contract

☐ Addendum for Coastal Area Property

☐ Addendum for Authorizing Hydrostatic Testing

☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal

☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum

☐ Seller's Temporary Residential Lease

☐ Short Sale Addendum

☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway

☐ Addendum for Seller's Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards as Required by Federal Law

☐ Addendum for Property in a Propane Gas System Service Area

☐ Addendum Regarding Residential Leases

☐ Addendum Regarding Fixture Leases

☐ Addendum containing Notice of Obligation to Pay Improvement District Assessment

☒ Other (list): Non-Realty Items Addendum

**23. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

| Buyer's Attorney is: | | Seller's Attorney is: | |
|---|---|---|---|
| | | | |
| | | | |
| Phone: | ( ) | Phone: | ( ) |
| Fax: | ( ) | Fax: | ( ) |
| E-mail: | | E-mail: | |

Initialed for identification by Buyer _JP_ _____ and Seller _EH_ _____     TREC NO. 20-16

Contract Concerning  806 Comstock Springs Drive, Katy, Texas 77450-3217      Page 9 of 11   11-08-2021
<div align="center">(Address of Property)</div>

---

**EXECUTED the __7TH__ day of __February_____, 20__22__ (Effective Date).**
**(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)**

---

┌DocuSigned by:                                        ┌DocuSigned by:

*John Prather*                    2/7/2022              *Ed Heimlich*         2/7/2022
└─A84C6D74DA...                                        └─8BFE176AE780458...
**Buyer**                                              **Seller**

_____          _____
Buyer                                    Seller

---


The form of this contract has been approved by the Texas Real Estate Commission.  TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 20-16. This form replaces TREC NO. 20-15.

TREC NO. 20-16

Contract Concerning 806 Comstock Springs Drive, Katy, Texas 77450-3217                Page 10 of 11   11-08-2021
                        (Address of Property)

## BROKER INFORMATION
### (Print name(s) only. Do not sign)

| | | | |
|---|---|---|---|
| Josh DeShong Real Estate | 09007233 | Bayou City Living | 0450505 |
| Other Broker Firm | License No. | Listing Broker Firm | License No. |

represents  ☒ Buyer only as Buyer's agent          represents  ☐ Seller and Buyer as an intermediary
            ☐ Seller as Listing Broker's subagent                 ☒ Seller only as Seller's agent

| | | | |
|---|---|---|---|
| JT Prather | 645437 | Kristina Seago | 0737594 |
| Associate's Name | License No. | Listing Associate's Name | License No. |
| Josh DeShong Real Estate | | | |
| Team Name | | Team Name | |
| jt@joshdeshong.com | 512-590-3843 | kristieseago@gmail.com | 936-391-5904 |
| Associate's Email Address | Phone | Listing Associate's Email Address | Phone |
| Josh DeShong | 0558435 | Bayou City Living | 0450505 |
| Licensed Supervisor of Associate | License No. | Licensed Supervisor of Listing Associate | License No. |
| 5050 Quorum Dr. #600 | 972-498-7659 | 10678 Jones Road | 281-310-5566 |
| Other Broker's Address | Phone | Listing Broker's Office Address | Phone |
| Dallas        TX       75254 | | HOUSTON        TX       77065 | |
| City        State       Zip | | City        State       Zip | |
| | | Selling Associate's Name | License No. |
| | | Team Name | |
| | | Selling Associate's Email Address | Phone |
| | | Licensed Supervisor of Selling Associate | License No. |
| | | Selling Associate's Office Address | |
| | | City        State       Zip | |

Disclosure: Pursuant to a previous, separate agreement (such as a MLS offer of compensation or other agreement between brokers), Listing Broker has agreed to pay Other Broker a fee (_2.5%___ ̱ ̱ ̱ ̱ ̱ ̱ ̱ ̱ ̱ ̱ ̱ ̱ ). This disclosure is for informational purposes and does not change the previous agreement between brokers to pay or share a commission.

TREC NO. 20-16

DocuSign Envelope ID: B1967FB6-E17D-4D8D-8906-E5F37C008B05
Case 4:25-mc-00796   Document 1-1   Filed on 04/30/25 in TXSD   Page 92 of 109

Contract Concerning _806 Comstock Springs Drive, Katy, Texas 77450-3217_____Page 11 of 11   11-08-2021
(Address of Property)

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____
is acknowledged.

_____        _____
Escrow Agent                                                                                                      Date

## EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____
is acknowledged.

Escrow Agent                                       Received by       Email Address                                      Date/Time

Address                                                                                                                      Phone

City                                                       State                      Zip                                       Fax

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

Escrow Agent                                       Received by       Email Address                                      Date

Address                                                                                                                      Phone

City                                                       State                      Zip                                       Fax

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of  $_____ additional Earnest Money in the form of _____
is acknowledged.

Escrow Agent                                       Received by       Email Address                                      Date/Time

Address                                                                                                                      Phone

City                                                       State                      Zip                                       Fax

TREC NO. 20-16

# ▶R TEXAS REALTORS®

## SELLER'S DISCLOSURE NOTICE

©Texas Association of REALTORS®, Inc. 2019

Section 5.008, Property Code requires a seller of residential property of not more than one dwelling unit to deliver a Seller's Disclosure Notice to a buyer on or before the effective date of a contract. **This form complies with and contains additional disclosures which exceed the minimum disclosures required by the Code.**

CONCERNING THE PROPERTY AT      **806 Comstock Springs Dr**
                                                  **Katy, TX  77450**

THIS NOTICE IS A DISCLOSURE OF SELLER'S KNOWLEDGE OF THE CONDITION OF THE PROPERTY AS OF THE DATE SIGNED BY SELLER AND IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THE BUYER MAY WISH TO OBTAIN. IT IS NOT A WARRANTY OF ANY KIND BY SELLER, SELLER'S AGENTS, OR ANY OTHER AGENT.

Seller ___ is _X_ is not occupying the Property. If unoccupied (by Seller), how long since Seller has occupied the Property? _____ (approximate date) or _X_ never occupied the Property

**Section 1.  The Property has the items marked below: (Mark Yes (Y), No (N), or Unknown (U).)**
*This notice does not establish the items to be conveyed. The contract will determine which items will & will not convey.*

| Item | Y | N | U | Item | Y | N | U | Item | Y | N | U |
|------|---|---|---|------|---|---|---|------|---|---|---|
| Cable TV Wiring | | | X | Liquid Propane Gas: | | X | | Pump:   sump   grinder | | X | |
| Carbon Monoxide Det. | | X | | -LP Community (Captive) | | X | | Rain Gutters | | X | |
| Ceiling Fans | X | | | -LP on Property | | X | | Range/Stove | X | | |
| Cooktop | X | | | Hot Tub | | X | | Roof/Attic Vents | X | | |
| Dishwasher | X | | | Intercom System | | X | | Sauna | | X | |
| Disposal | X | | | Microwave | | X | | Smoke Detector | | X | |
| Emergency Escape Ladder(s) | | X | | Outdoor Grill | X | | | Smoke Detector – Hearing Impaired | | X | |
| Exhaust Fans | X | | | Patio/Decking | X | | | Spa | | X | |
| Fences | X | | | Plumbing System | X | | | Trash Compactor | | X | |
| Fire Detection Equip. | | X | | Pool | | X | | TV Antenna | | X | |
| French Drain | | X | | Pool Equipment | | X | | Washer/Dryer Hookup | X | | |
| Gas Fixtures | X | | | Pool Maint. Accessories | | X | | Window Screens | X | | |
| Natural Gas Lines | | X | | Pool Heater | | X | | Public Sewer System | X | | |

| Item | Y | N | U | Additional Information |
|------|---|---|---|------------------------|
| Central A/C | X | | | electric   gas  number of units: |
| Evaporative Coolers | | X | | number of units: |
| Wall/Window AC Units | | X | | number of units: |
| Attic Fan(s) | | X | | if yes, describe: |
| Central Heat | X | | | electric   gas  number of units: |
| Other Heat | | X | | if yes, describe: |
| Oven | X | | | number of ovens:       electric   gas   other: |
| Fireplace & Chimney | X | | | wood   gas logs   mock   other: |
| Carport | | X | | attached   not attached |
| Garage | X | | | attached   not attached |
| Garage Door Openers | X | | | number of units:         number of remotes: |
| Satellite Dish & Controls | | X | | owned   leased from: |
| Security System | | X | | owned   leased from: |
| Solar Panels | | X | | owned   leased from: |
| Water Heater | X | | | electric   gas   other:       number of units: |
| Water Softener | | X | | owned   leased from: |
| Other Leased Items(s) | | X | | if yes, describe: |

(TXR-1406) 09-01-19          Initialed by: Buyer: _JP_ , _____ and Seller: _EH_          Page 1 of 6

**806 Comstock Springs Dr**
**Katy, TX  77450**

Concerning the Property at _____

| | | Y | N | |
|---|---|---|---|---|
| Underground Lawn Sprinkler | | | X | automatic    manual  areas covered: |
| Septic / On-Site Sewer Facility | | | X | if yes, attach Information About On-Site Sewer Facility (TXR-1407) |

Water supply provided by: __ city __ well __(MUD)__ co-op __ unknown __ other: _____
Was the Property built before 1978? __ yes _X_ no __ unknown
(If yes, complete, sign, and attach TXR-1906 concerning lead-based paint hazards).
Roof Type: _____ Age: _____ (approximate)
Is there an overlay roof covering on the Property (shingles or roof covering placed over existing shingles or roof covering)? __ yes _X_ no __ unknown

Are you (Seller) aware of any of the items listed in this Section 1 that are not in working condition, that have defects, or are need of repair? __ yes _X_ no If yes, describe (attach additional sheets if necessary): _____
_____
_____
_____

**Section 2.  Are you (Seller) aware of any defects or malfunctions in any of the following? (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Item | Y | N | Item | Y | N | Item | Y | N |
|---|---|---|---|---|---|---|---|---|
| Basement | | X | Floors | | X | Sidewalks | | X |
| Ceilings | | X | Foundation / Slab(s) | | X | Walls / Fences | | X |
| Doors | | X | Interior Walls | | X | Windows | | X |
| Driveways | | X | Lighting Fixtures | | X | Other Structural Components | | X |
| Electrical Systems | | X | Plumbing Systems | | X | | | |
| Exterior Walls | | X | Roof | | X | | | |

If the answer to any of the items in Section 2 is yes, explain (attach additional sheets if necessary): _____
_____
_____

**Section 3.  Are you (Seller) aware of any of the following conditions? (Mark Yes (Y) if you are aware and No (N) if you are not aware.)**

| Condition | Y | N | Condition | Y | N |
|---|---|---|---|---|---|
| Aluminum Wiring | | X | Radon Gas | | X |
| Asbestos Components | | X | Settling | | X |
| Diseased Trees:  □ oak wilt | | X | Soil Movement | | X |
| Endangered Species/Habitat on Property | | X | Subsurface Structure or Pits | | X |
| Fault Lines | | X | Underground Storage Tanks | | X |
| Hazardous or Toxic Waste | | X | Unplatted Easements | | X |
| Improper Drainage | | X | Unrecorded Easements | | X |
| Intermittent or Weather Springs | | X | Urea-formaldehyde Insulation | | X |
| Landfill | | X | Water Damage Not Due to a Flood Event | | X |
| Lead-Based Paint or Lead-Based Pt. Hazards | | X | Wetlands on Property | | X |
| Encroachments onto the Property | | X | Wood Rot | | X |
| Improvements encroaching on others' property | | X | Active infestation of termites or other wood destroying insects (WDI) | | X |
| Located in Historic District | | X | Previous treatment for termites or WDI | | X |
| Historic Property Designation | | X | Previous termite or WDI damage repaired | | X |
| Previous Foundation Repairs | | X | Previous Fires | | X |
| Previous Roof Repairs | | X | Termite or WDI damage needing repair | | X |
| Previous Other Structural Repairs | | X | Single Blockable Main Drain in Pool/Hot Tub/Spa* | | X |
| Previous Use of Premises for Manufacture of Methamphetamine | —DS | X | | | |

(TXR-1406) 09-01-19          Initialed by: Buyer: _JP_ , _____ and Seller: _____          Page 2 of 6

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com    Helmlich - Com

**806 Comstock Springs Dr**

Concerning the Property at _____ **Katy, TX  77450** _____

If the answer to any of the items in Section 3 is yes, explain (attach additional sheets if necessary): _____
_____
_____
_____

*A single blockable main drain may cause a suction entrapment hazard for an individual.

**Section 4.  Are you (Seller) aware of any item, equipment, or system in or on the Property that is in need of repair, which has not been previously disclosed in this notice?** __ yes __ no If yes, explain (attach additional sheets if necessary): _____
_____
_____
_____

**Section 5.  Are you (Seller) aware of any of the following conditions?* (Mark Yes (Y) if you are aware and check wholly or partly as applicable. Mark No (N) if you are not aware.)**

Y   N

__   X   Present flood insurance coverage (if yes, attach TXR 1414).

__   X   Previous flooding due to a failure or breach of a reservoir or a controlled or emergency release of water from a reservoir.

__   X   Previous flooding due to a natural flood event (if yes, attach TXR 1414).

__   X   Previous water penetration into a structure on the Property due to a natural flood event (if yes, attach TXR 1414).

__   X   Located __ wholly __ partly in a 100-year floodplain (Special Flood Hazard Area-Zone A, V, A99, AE AO, AH, VE, or AR) (if yes, attach TXR 1414).

__   X   Located __ wholly __ partly in a 500-year floodplain (Moderate Flood Hazard Area-Zone X (shaded)).

__   X   Located __ wholly __ partly in a floodway (if yes, attach TXR 1414).

__   X   Located __ wholly __ partly in a flood pool.

__   X   Located __ wholly __ partly in a reservoir.

If the answer to any of the above is yes, explain (attach additional sheets as necessary): _____
_____
_____

*For purposes of this notice:

"100-year floodplain" means any area of land that: (A) is identified on the flood insurance rate map as a special flood hazard area, which is designated as Zone A, V, A99, AE, AO, AH, VE, or AR on the map; (B) has a one percent annual chance of flooding, which is considered to be a high risk of flooding; and (C) may include a regulatory floodway, flood pool, or reservoir.

"500-year floodplain" means any area of land that: (A) is identified on the flood insurance rate map as a moderate flood hazard area, which is designated on the map as Zone X (shaded); and (B) has a two-tenths of one percent annual chance of flooding, which is considered to be a moderate risk of flooding.

"Flood pool" means the area adjacent to a reservoir that lies above the normal maximum operating level of the reservoir and that is subject to controlled inundation under the management of the United States Army Corps of Engineers.

"Flood insurance rate map" means the most recent flood hazard map published by the Federal Emergency Management Agency under the National Flood Insurance Act of 1968 (42 U.S.C. Section 4001 et seq.).

"Floodway" means an area that is identified on the flood insurance rate map as a regulatory floodway, which includes the channel of a river or other watercourse and the adjacent land areas that must be reserved for the discharge of a base flood, also referred to as a 100-year flood, without cumulatively increasing the water surface elevation more than a designated height.

"Reservoir" means a water impoundment project operated by the United States Army Corps of Engineers that is intended to retain water or delay the runoff of water in a designated surface area of land.

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com   Heimlich - Cora

**806 Comstock Springs Dr**
**Katy, TX 77450**

Concerning the Property at _____

**Section 6. Have you (Seller) ever filed a claim for flood damage to the Property with any insurance provider, including the National Flood Insurance Program (NFIP)?*** __ yes ☒ no If yes, explain (attach additional sheets as necessary): _____

_____

*Homes in high risk flood zones with mortgages from federally regulated or insured lenders are required to have flood insurance. Even when not required, the Federal Emergency Management Agency (FEMA) encourages homeowners in high risk, moderate risk, and low risk flood zones to purchase flood insurance that covers the structure(s) and the personal property within the structure(s).

**Section 7. Have you (Seller) ever received assistance from FEMA or the U.S. Small Business Administration (SBA) for flood damage to the Property?** __ yes ☒ no If yes, explain (attach additional sheets as necessary): _____

_____

**Section 8. Are you (Seller) aware of any of the following? (Mark Yes (Y) if you are aware. Mark No (N) if you are not aware.)**

**Y   N**

__ ☒ Room additions, structural modifications, or other alterations or repairs made without necessary permits, with unresolved permits, or not in compliance with building codes in effect at the time.

__ __ Homeowners' associations or maintenance fees or assessments. If yes, complete the following:
Name of association: _Cimarron PUD HOA_     _281-634-0300_
Manager's name: _Mass Austin Properties_     Phone: _713-860-6400_
Fees or assessments are: $ _310_ per _year_ and are: __ mandatory __ voluntary
Any unpaid fees or assessment for the Property? __ yes ($ _____ ) __ no
If the Property is in more than one association, provide information about the other associations below or attach information to this notice.

__ __ Any common area (facilities such as pools, tennis courts, walkways, or other) co-owned in undivided interest with others. If yes, complete the following:
Any optional user fees for common facilities charged? __ yes __ no If yes, describe: _____

__ ☒ Any notices of violations of deed restrictions or governmental ordinances affecting the condition or use of the Property.

☒ __ Any lawsuits or other legal proceedings directly or indirectly affecting the Property. (Includes, but is not limited to: divorce, foreclosure, heirship, bankruptcy, and taxes.) _Probate_

__ ☒ Any death on the Property except for those deaths caused by: natural causes, suicide, or accident unrelated to the condition of the Property.

__ ☒ Any condition on the Property which materially affects the health or safety of an individual.

__ ☒ Any repairs or treatments, other than routine maintenance, made to the Property to remediate environmental hazards such as asbestos, radon, lead-based paint, urea-formaldehyde, or mold.
If yes, attach any certificates or other documentation identifying the extent of the remediation (for example, certificate of mold remediation or other remediation).

__ ☒ Any rainwater harvesting system located on the Property that is larger than 500 gallons and that uses a public water supply as an auxiliary water source.

__ ☒ The Property is located in a propane gas system service area owned by a propane distribution system retailer.

__ ☒ Any portion of the Property that is located in a groundwater conservation district or a subsidence district.

If the answer to any of the items in Section 8 is yes, explain (attach additional sheets if necessary): _____

_____

(TXR-1406) 09-01-19     Initialed by: Buyer: _JP_ , _____ and Seller: _____     Page 4 of 6

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com     Heimlich - Com

Concerning the Property at _____
**806 Comstock Springs Dr**
**Katy, TX 77450**

_____
_____
_____
_____

**Section 9. Seller __ has __ has not attached a survey of the Property.**

**Section 10. Within the last 4 years, have you (Seller) received any written inspection reports from persons who regularly provide inspections and who are either licensed as inspectors or otherwise permitted by law to perform inspections? __ yes __ no If yes, attach copies and complete the following:**

| Inspection Date | Type | Name of Inspector | No. of Pages |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

*Note: A buyer should not rely on the above-cited reports as a reflection of the current condition of the Property. A buyer should obtain inspections from inspectors chosen by the buyer.*

**Section 11. Check any tax exemption(s) which you (Seller) currently claim for the Property:**

__ Homestead                     __ Senior Citizen                     __ Disabled
__ Wildlife Management       __ Agricultural                          __ Disabled Veteran
__ Other: _____       __ Unknown

**Section 12. Have you (Seller) ever filed a claim for damage, other than flood damage, to the Property with any insurance provider? __ yes _✗_ no**

**Section 13. Have you (Seller) ever received proceeds for a claim for damage to the Property (for example, an insurance claim or a settlement or award in a legal proceeding) and not used the proceeds to make the repairs for which the claim was made? __ yes _✗_ no If yes, explain:** _____
_____
_____

**Section 14. Does the Property have working smoke detectors installed in accordance with the smoke detector requirements of Chapter 766 of the Health and Safety Code?* __ unknown __ no __ yes. If no or unknown, explain. (Attach additional sheets if necessary):** _____
_____

*\*Chapter 766 of the Health and Safety Code requires one-family or two-family dwellings to have working smoke detectors installed in accordance with the requirements of the building code in effect in the area in which the dwelling is located, including performance, location, and power source requirements. If you do not know the building code requirements in effect in your area, you may check unknown above or contact your local building official for more information.*

*A buyer may require a seller to install smoke detectors for the hearing impaired if: (1) the buyer or a member of the buyer's family who will reside in the dwelling is hearing-impaired; (2) the buyer gives the seller written evidence of the hearing impairment from a licensed physician; and (3) within 10 days after the effective date, the buyer makes a written request for the seller to install smoke detectors for the hearing-impaired and specifies the locations for installation. The parties may agree who will bear the cost of installing the smoke detectors and which brand of smoke detectors to install.*

Seller acknowledges that the statements in this notice are true to the best of Seller's belief and that no person, including the broker(s), has instructed or influenced Seller to provide inaccurate information or to omit any material information.

_____ Jan 25, 2022     _____
Signature of Seller                    Date        Signature of Seller                    Date

Printed Name: Ed Heimlich          Printed Name: _____

(TXR-1406) 09-01-19          Initialed by: Buyer: JP , _____ and Seller: _____          Page 5 of 6

Concerning the Property at **806 Comstock Springs Dr**
**Katy, TX 77450**

**ADDITIONAL NOTICES TO BUYER:**

(1) The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain zip code areas. To search the database, visit https://publicsite.dps.texas.gov/SexOffenderRegistry. For information concerning past criminal activity in certain areas or neighborhoods, contact the local police department.

(2) If the Property is located in a coastal area that is seaward of the Gulf Intracoastal Waterway or within 1,000 feet of the mean high tide bordering the Gulf of Mexico, the Property may be subject to the Open Beaches Act or the Dune Protection Act (Chapter 61 or 63, Natural Resources Code, respectively) and a beachfront construction certificate or dune protection permit may be required for repairs or improvements. Contact the local government with ordinance authority over construction adjacent to public beaches for more information.

(3) If the Property is located in a seacoast territory of this state designated as a catastrophe area by the Commissioner of the Texas Department of Insurance, the Property may be subject to additional requirements to obtain or continue windstorm and hail insurance. A certificate of compliance may be required for repairs or improvements to the Property. For more information, please review *Information Regarding Windstorm and Hail Insurance for Certain Properties* (TXR 2518) and contact the Texas Department of Insurance or the Texas Windstorm Insurance Association.

(4) This Property may be located near a military installation and may be affected by high noise or air installation compatible use zones or other operations. Information relating to high noise and compatible use zones is available in the most recent Air Installation Compatible Use Zone Study or Joint Land Use Study prepared for a military installation and may be accessed on the Internet website of the military installation and of the county and any municipality in which the military installation is located.

(5) If you are basing your offers on square footage, measurements, or boundaries, you should have those items independently measured to verify any reported information.

(6) The following providers currently provide service to the Property:

| | | | |
|---|---|---|---|
| Electric: | Direct Energy | phone #: | 855-461-1926 |
| Sewer: | Cinnerron MUD | phone #: | 832-490-1601 |
| Water: | Cinnarron MUD | phone #: | |
| Cable: | | phone #: | |
| Trash: | Texas Pride Disposal | phone #: | 281-342-8178 |
| Natural Gas: | Centerpoint Energy | phone #: | 713-659-2111 |
| Phone Company: | | phone #: | |
| Propane: | | phone #: | |
| Internet: | | phone #: | |

(7) This Seller's Disclosure Notice was completed by Seller as of the date signed. The brokers have relied on this notice as true and correct and have no reason to believe it to be false or inaccurate. YOU ARE ENCOURAGED TO HAVE AN INSPECTOR OF YOUR CHOICE INSPECT THE PROPERTY.

The undersigned Buyer acknowledges receipt of the foregoing notice.

DocuSigned by:
*John Prather*                     2/7/2022

Signature of Buyer  John Prather            Date          Signature of Buyer                          Date

Printed Name: _____          Printed Name: _____

(TXR-1406) 09-01-19        Initialed by: Buyer:  JP  ,  and Seller:  ___        Page 6 of 6

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com    Heimlich - Com

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)    11-10-2020

**ADDENDUM FOR PROPERTY SUBJECT TO
MANDATORY MEMBERSHIP IN A PROPERTY
OWNERS ASSOCIATION**
(NOT FOR USE WITH CONDOMINIUMS)
**ADDENDUM TO CONTRACT CONCERNING THE PROPERTY AT**

806 Comstock Springs Drive, Katy, Texas 77450-3217
(Street Address and City)

Cimarron HOA / 713-776-1711
(Name of Property Owners Association, (Association) and Phone Number)

**A. SUBDIVISION INFORMATION:** "Subdivision Information" means: (i) a current copy of the restrictions applying to the subdivision and bylaws and rules of the Association, and (ii) a resale certificate, all of which are described by Section 207.003 of the Texas Property Code.

(Check only one box):

☐ 1. Within _____ days after the effective date of the contract, Seller shall obtain, pay for, and deliver the Subdivision Information to the Buyer. If Seller delivers the Subdivision Information, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.  If Buyer does not receive the Subdivision Information, Buyer, as Buyer's sole remedy, may terminate the contract at any time prior to closing and the earnest money will be refunded to Buyer.

☒ 2. Within 10 _____ days after the effective date of the contract, Buyer shall obtain, pay for, and deliver a copy of the Subdivision Information to the Seller.   If Buyer obtains the Subdivision Information within the time required, Buyer may terminate the contract within 3 days after Buyer receives the Subdivision Information or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.   If Buyer, due to factors beyond Buyer's control, is not able to obtain the Subdivision Information within the time required, Buyer may, as Buyer's sole remedy, terminate the contract within 3 days after the time required or prior to closing, whichever occurs first, and the earnest money will be refunded to Buyer.

☐ 3. Buyer has received and approved the Subdivision Information before signing the contract. Buyer ☐  does ☐  does not require an updated resale certificate. If Buyer requires an updated resale certificate, Seller, at Buyer's expense, shall deliver it to Buyer within 10 days after receiving payment for the updated resale certificate from Buyer. Buyer may terminate this contract and the earnest money will be refunded to Buyer if Seller fails to deliver the updated resale certificate within the time required.

☐ 4. Buyer does not require delivery of the Subdivision Information.

**The title company or its agent is authorized to act on behalf of the parties to obtain the Subdivision Information ONLY upon receipt of the required fee for the Subdivision Information from the party obligated to pay.**

**B. MATERIAL CHANGES.** If Seller becomes aware of any material changes in the Subdivision Information, Seller shall promptly give notice to Buyer. Buyer may terminate the contract prior to closing by giving written notice to Seller if: (i) any of the Subdivision Information provided was not true; or (ii) any material adverse change in the Subdivision Information occurs prior to closing, and the earnest money will be refunded to Buyer.

**C. FEES AND DEPOSITS FOR RESERVES:** Except as provided by Paragraphs A and D, Buyer shall pay any and all Association fees, deposits, reserves, and other charges associated with the transfer of the Property not to exceed $ 250.00 _____ and Seller shall pay any excess.

**D. AUTHORIZATION:**  Seller authorizes the Association to release and provide the Subdivision Information and any updated resale certificate if requested by the Buyer, the Title Company, or any broker to this sale. If Buyer does not require the Subdivision Information or an updated resale certificate, and the Title Company requires information from the Association (such as the status of dues, special assessments, violations of covenants and restrictions, and a waiver of any right of first refusal), ☒ Buyer ☐ Seller shall pay the Title Company the cost of obtaining the information prior to the Title Company ordering the information.

**NOTICE TO BUYER REGARDING REPAIRS BY THE ASSOCIATION:** The Association may have the sole responsibility to make certain repairs to the Property. If you are concerned about the condition of any part of the Property which the Association is required to repair, you should not sign the contract unless you are satisfied that the Association will make the desired repairs.

| | | |
|---|---|---|
| _John Prather_ | 2/7/2022 | _Ed Heimlich_  2/7/2022 |
| **Buyer** | | **Seller** |
| | | |
| **Buyer** | | **Seller** |



The form of this addendum has been approved by the Texas Real Estate Commission for use only with similarly approved or promulgated forms of contracts. Such approval relates to this contract form only.  TREC forms are intended for use only by trained real estate licensees. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions.  Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000  (www.trec.texas.gov) TREC No. 36-9.  This form replaces TREC No. 36-8.

TREC NO. 36-9

DocuSign Envelope ID: B19627B6-F17D-4D8D-8906-E5E37C008B0F



HAR com

# Notice to a Purchaser of Real Property in a Water District

Note: This Notice should be completed and given to a prospective purchaser prior to execution of a binding contract of sale and purchase, should be executed by the seller and purchaser and should be attached as a separate portion of a purchase contract. Please see NOTE at bottom of page.

1) The real property, described below, that you are about to purchase is located in the _____ Cimarron MUD _____ District. The district has taxing authority separate from any other taxing authority and may, subject to voter approval, issue an unlimited amount of bonds and levy an unlimited rate of tax in payment of such bonds. As of this date, the rate of taxes levied by the district on real property located in the district is $0.37 _____ on each $100 of assessed valuation. If the district has not yet levied taxes, the most recent projected rate of tax, as of this date, is $0.37 _____ on each $100 of assessed valuation. The total amount of bonds, excluding refunding bonds and any bonds or any portion of bonds issued that are payable solely from revenues received or expected to be received under a contract with a governmental entity, approved by the voters and which have been or may, at this date, be issued in $56,670,000.00 _____ , and the aggregate initial principal amounts of all bonds issued for one or more of the specified facilities of the district and payable in whole or in part from property taxes is $54,963,429.00 _____ .

2) The district has the authority to adopt and impose a standby fee on property in the district that has water, sanitary sewer, or drainage facilities and services available but not connected and which does not have a house, building, or other improvement located thereon and does not substantially utilize the utility capacity available to the property. The district may exercise the authority without holding an election on the matter. As of this date, the most recent amount of the standby fee is $zero _____ . An unpaid standby fee is a personal obligation of the person that owned the property at the time of imposition and is secured by a lien on the property. Any person may request a certificate from the district stating the amount, if any, of unpaid standby fees on a tract of property in the district.

3) Mark an "X" in one of the following three spaces and complete as instructed.

____  **Notice for Districts Located in Whole or in Part within the Corporate Boundaries of a Municipality (Complete Paragraph A).**

____  **Notice for Districts Located in Whole or in Part in the Extraterritorial Jurisdiction of One or More Home-Rule Municipalities and Not Located within the Corporate Boundaries of a Municipality (Complete Paragraph B).**

_X_  **Notice for Districts that are NOT Located in Whole or in Part within the Corporate Boundaries of a Municipality or the Extraterritorial Jurisdiction of One or More Home-Rule Municipalities.**

A) The district is located in whole or in part within the corporate boundaries of the City of _____ . The taxpayers of the district are subject to the taxes imposed by the municipality and by the district until the district is dissolved. By law, a district located within the corporate boundaries of a municipality may be dissolved by municipal ordinance without the consent of the district or the voters of the district.

B) The district is located in whole or in part in the extraterritorial jurisdiction of the City of _____ . By law, a district located in the extraterritorial jurisdiction of a municipality may be annexed without the consent of the district or the voters of the district. When a district is annexed, the district is dissolved.

4) The purpose of this district is to provide water, sewer, drainage, or flood control facilities and services within the district through the issuance of bonds payable in whole or in part from property taxes. The cost of these utility facilities is not included in the purchase price of your property, and these utility facilities are owned or to be owned by the district. The legal description of the property you are acquiring is as follows: **LT 55 BLK 24 CIMARRON SEC 7.**

| | | | |
|---|---|---|---|
| *Ed Heimlich* | 1/14/2022 | | |
| Signature of Seller | Date | Signature of Seller | Date |
| **Owner of Record** | | | |

PURCHASER IS ADVISED THAT THE INFORMATION SHOWN ON THIS FORM IS SUBJECT TO CHANGE BY THE DISTRICT AT ANY TIME. THE DISTRICT ROUTINELY ESTABLISHES TAX RATES DURING THE MONTHS OF SEPTEMBER THROUGH DECEMBER OF EACH YEAR, EFFECTIVE FOR THE YEAR IN WHICH THE TAX RATES ARE APPROVED BY THE DISTRICT. PURCHASER IS ADVISED TO CONTACT THE DISTRICT TO DETERMINE THE STATUS OF AN CURRENT OR PROPOSED CHANGES TO T HE INFORMATION SHOWN ON THIS FORM.

The undersigned purchaser hereby acknowledges receipt of the foregoing notice at or prior to execution of a binding contract for the purchase of the real property described in such notice or at closing of purchase of the real property.

| | | | |
|---|---|---|---|
| *John Prather* | 2/7/2022 | | |
| Signature of Purchaser | Date | Signature of Purchaser | Date |

NOTE: Correct district name, tax rate, bond amounts. and legal description are to be placed in the appropriate space. Except for notices included as an addendum or paragraph of a purchase contract, the notice shall be executed by the seller and purchaser, as indicated. If the district does not propose to provide one or more of the specified facilities and services, the appropriate purpose may be eliminated. If the district has not yet levied taxes, a statement of the district's most recent projected rate of tax is to be placed in the appropriate space. If the district does not have approval from the commission to adopt and impose a standby fee, the second paragraph of the notice may be deleted. For the purposes of the notice form required to be given to the prospective purchaser prior to execution of a binding contract of sale and purchase, a seller and any agent, representative, or person acting on the seller's behalf may modify the notice by substitution of the words "January 1, 2022 _____ " for the words "this date" and place the correct calendar year in the appropriate space.

Bayou City Living 1531 Durfey Ln Katy, TX 77449
Kristina Seago          Produced with Lone Wolf Transactions (zipForm Edition):717 N Harwood St, Suite 2200, Dallas, TX  75201  www.lwolf.com          Phone: (936)391-5904     Fax:          Heimlich - Com

# APPENDIX  D

FILED
6/23/2023 5:05 PM
Teneshia Hudspeth
County Clerk
Probate Court 1

Accepted By: JA

**495484-403**

CAUSE NO. 495484-~~401~~

| ESTATE OF | § | IN PROBATE COURT NO. 1 |
|---|---|---|
| ERNEST L. HEIMLICH, | § | OF |
| DECEASED | § | HARRIS COUNTY, TEXAS |

## ADMINISTRATOR'S PETITION TO DECLARE MECHANIC'S LIEN UNENFORCEABLE AND INVALID

David S. Cook, as Dependent Administrator ("Administrator") of the Estate of Ernest L. Heimlich, Deceased ("Estate"), files this Petition to Declare Mechanic's Lien Unenforceable and Invalid, and would show as follows:

### DISCOVERY LEVEL

Administrator asserts that this cause of action should be litigated pursuant to Discovery Level 2.

### JURISDICTION

Venue is proper in this county, and this Court has jurisdiction over the subject matter because a probate administration is pending in the above entitled and numbered base cause and court.

### PARTIES

Plaintiff is David Cook, Dependent Administrator of the Estate in Harris County Probate Court No. 1 (currently).

Edmund B. Heimlich ("Defendant") is an heir to the Estate of Ernest Heimlich, Deceased ("Decedent"). Administrator has no actual knowledge of where Defendant is residing, although he is believed to be a Texas resident and domiciliary; thus, Defendant may be served with citation wherever he may be found. Defendant's email address is ed44@att.net. His telephone number is 512.779.0234.

UNOFFICIAL COPY

### PERTINENT FACTS

Decedent died intestate on May 25, 2021, owning three residential properties, being the Decedent's residence located at 6410 Rancho Blanco, Houston, TX (the "Rancho Blanco Property"), and two other residences located at 7318 Mesones Drive, Houston, TX (the "Mesones Property") and 806 Comstock Springs Drive, Katy, TX (the "Comstock Property").

The Rancho Blanco Property, the Mesones Property, and the Comstock Property are collectively referenced as the "Estate Properties."

Defendant is Decedent's son, and one of Decedent's five children, who include Defendant, Catherine Craig, Virginia Lahrman, Darcia Bland and Anne Board ("Heirs").

Administrator was appointed by the Court in his fiduciary capacity on September 9, 2021 and qualified as administrator on September 22, 2021.

On November 19, 2021, Administrator entered into a contract to sell the Comstock Property to Defendant. As a part of the negotiation, Defendant informed Administrator that Defendant desired to make improvements to the Comstock Property *before* closing the sale of Comstock. Defendant submitted an addendum with his offer allowing him to have access to the Comstock Property before closing. Administrator would not—and did not—agree to allow Defendant to have access to the Comstock Property (for other than inspections) or to make any improvements prior to closing. Administrator responded to Defendant's real estate agent and Defendant's offer, and in particular, the addendum, as follows:

> Also, the work during the term of the contract makes it difficult. I am certain Ed has great intentions, but things happen. What if Ed pays a contractor or sub to do work, and not much gets accomplished other than demolition. Thereafter, Ed walks away from the deal. If that is the case, the estate will be responsible to redress any damages done to the property with only the earnest money (less than $2K). Can we just make this a traditional closing and turn over possession at closing?

2

In a later email, Defendant acknowledged he would not have possession until after the closing:

> It is my understanding that David wants the traditional 'possession upon closing.'
> So, that addendum can be ignored, and David can sign all the other sheets."

Administrator and Defendant signed the Earnest Money Contract, which did not include the Addendum; thus, Defendant was prohibited from having possession of the Comstock Property until closing (i.e., until he bought it).

After the parties signed the Earnest Money Contract, Defendant broke and entered the Comstock Property and changed the locks. When Administrator learned that Defendant had entered the Comstock Property, Administrator asked Defendant how he was able to access the property. Defendant replied: "I trespassed." Defendant, among other things, painted the interior and made changes to the flooring. Much of the work—which was never authorized— was determined to be shoddy workmanship. Administrator was later informed Defendant had hired a broker and was listing it for sale. In response to an email, Administrator questioned how Defendant was doing so, and copied Defendant's listing agent because Defendant had no authority to enter into realtor contracts on behalf of the Estate. Defendant then attempted to enter into a contract on behalf of the Estate, as seller, to sell the Comstock Property to a third-party buyer. Administrator informed Defendant that he could not enter into contracts to sell the Comstock Property on behalf of the Estate.

As a result of Defendant's actions, and the delay caused by his trespass, his improper listing, and his unsuccessful sale to an assignee, Defendant was not able to perform under the Earnest Money Contract in accordance with its terms. Consequently, Administrator changed the locks again and sent a demand that Defendant and his agent never access the Comstock Property

and remove the on-line listing of the Premises. Administrator then removed the "for sale" sign in the front yard and the lock box from the door.

On September 20, 2022, Defendant filed the attached Affidavit of Mechanic's Lien ("Affidavit") asserting a $79,500 lien ("Alleged Lien") against the Comstock Property.

The Affidavit states, in pertinent part, as follows:

- Defendant signed a contract November 19, 2021 . . . and was employed or furnished labor, services, equipment and/or materials under an agreement with Estate of Ernest L. Heimlich . . .."

- Defendant completed services and his claim became due on January 21, 2022.

First, Administrator denies there was any such contract to employ Defendant or to be furnished labor, services, equipment and/or materials. In fact, there is a written agreement and correspondence that evidence the parties' intent that Defendant could **_not_** perform any work, and he could not have possession of the Comstock Property before closing.

Second, Defendant did not file the Affidavit as required by Texas Property Code Section 53.052, which requires:

An original contractor[1] claiming the lien must file an affidavit with the county clerk: . . . (2) for residential construction projects, not later than the 15th day of the third month after the month in which the original contractor's work was completed, terminated, or abandoned.

Defendant stated in his Affidavit that the services were completed on January 21, 2022. Consequently, Defendant would have been required to file his Affidavit on or before April 15, 2022. Defendant did not file his Affidavit until September 20, 2022 (with respect to the Affidavit filed the county's real property records) or August 8, 2022 (with respect to the Affidavit filed in

---

[1] Administrator denies he entered into any agreement with Defendant to act as a general contractor, but Defendant would have had to comply with this Texas law if there was such an agreement, as it relates to filing liens and affidavits of liens.

the probate records of Harris County Probate Court No. 1); thus, Defendant filed the Affidavit five (or four) months too late.

Third, assuming his Alleged Lien was valid, Defendant failed to bring a suit to foreclose the Alleged Lien on or before April 21, 2023, which was the last day he could have foreclosed his Alleged Lien. TEX. PROP. CODE §53.158 (a) (providing that suit must be brought to foreclose the lien not later than the first anniversary of the last day a claimant may file the lien affidavit under Section 53.052, which is 15th day after the third month when the work was terminated, completed or abandoned).

Fourth, while Defendant did not bring a suit to foreclose, he did file a $79,500 claim in the Estate cause if action, and attached his Affidavit ("Claim"). Defendant filed his Claim on August 9, 2022. Administrator did not act on the Claim; consequently, Defendant had until December 7, 2022 to file a suit on the rejected Claim. TEX. EST. CODE §355.051 ("A personal representative of an estate shall, not later than the 30th day after the date an authenticated claim against the estate is presented to the representative, or deposited with the clerk as provided under Section 355.002, endorse on the claim attach to the claim . . . "); TEX. EST. CODE § 355.052 ("The failure of a personal representative to timely allow or reject a claim under Section 355.051 constitutes a rejection of the claim."); TEX. EST. CODE § 355.064(a)("A claim or part of a claim that has been rejected by the personal representative is barred unless not later than the 90th day after the date of rejection the claimant commences suit on the claim in the court of original probate jurisdiction in which the estate is pending.").

<div align="center">

*REQUEST FOR ATTORNEY'S FEES AND COSTS*

</div>

Administrator asks this Court to award attorneys' fees and costs pursuant to Texas Property Code Section 53.156 and any other applicable Texas law.

<div align="center">5</div>

For the reasons stated above, Administrator asks this Court (i) to declare mechanic's lien unenforceable and invalid, (ii) award attorneys' fees and costs as requested herein, and (iii) to grant all further relief to which Administrator is entitled.

Respectfully submitted,

COOK LAW, PLLC
*/s/ David S. Cook*
David S. Cook
Texas Bar No. 00796391
211 W. 11th St.
Houston, Texas 77008
713.568.6511 (office)
713.574.2904 (fax)
dcook@cooklawpllc.net

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing petition has been served upon all parties of record via e-filing in accordance with the Texas Rules of Civil Procedure on this 23rd day of June, 2023.

*/s/ David S. Cook*
David S. Cook



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Cook
Bar No. 00796391
dcook@cooklawpllc.net
Envelope ID: 76928639
Filing Code Description: Petition
Filing Description: Administrator's Petition to Declare Mechanics Lien Unenforceable and Invalid
Status as of 6/26/2023 1:28 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jessica Kasischke | | jkasischke@cooklawpllc.net | 6/23/2023 5:05:46 PM | SENT |
| Carmen Castro | | ccastro@cooklawpllc.net | 6/23/2023 5:05:46 PM | SENT |



JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Edmund Heimlich | David S. Cook as Personal Representative of the Estate of Ernest L. Heimlich |

**(b)** County of Residence of First Listed Plaintiff    Travis
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Harris
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
none

Attorneys *(If Known)*
none authorized

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [x] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [x] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [x] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | **PERSONAL PROPERTY** | | [ ] 485 Telephone Consumer Protection Act |
| [x] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 370 Other Fraud | **LABOR** | |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | [ ] 850 Securities/Commodities/ Exchange |
| | | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 751 Family and Medical Leave Act | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | [ ] 791 Employee Retirement Income Security Act | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | |
| | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Condition | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | |

**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 Taxes (U.S. Plaintiff or Defendant)
[ ] 871 IRS—Third Party 26 USC 7609

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   200,00.000

CHECK YES only if demanded in complaint:
JURY DEMAND:    [x] Yes    [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    April 28, 2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____